**COMMONWEALTH of Pennsylvania, Appellee**

v.

**David Pierre KING, Appellant.**

Superior Court of Pennsylvania.

Argued Nov. 17, 2009.

Filed Feb. 1, 2010.

Reargument Denied April 9, 2010.

---

**6.** The kidnapping convictions related to the McKnight children, as the jury acquitted Appellant on a charge of kidnapping Ms. Miller. *See* N.T., Jan. 31, 2008, at 87.

Jeffrey M. Murray, Public Defender, Pittsburgh, for appellant.

Sandra Preuhs, Assistant District Attorney, Pittsburgh, for Commonwealth, appellee.

BEFORE: PANELLA, SHOGAN and COLVILLE *, JJ.

OPINION BY COLVILLE, J.:

¶ 1 This case is an appeal from judgment of sentence. There are three issues: (1) whether the evidence was sufficient to support Appellant's conviction for third degree murder; (2) whether the trial court erred in denying Appellant's motion to bar his trial on grounds of double jeopardy; and (3) whether the trial court erred in not setting aside the verdict due to juror misconduct. We affirm the judgment of sentence.

### Facts

¶ 2 The record reveals the following facts. In the weeks preceding the incident in question, Appellant encountered Oth-

---

* Retired Senior Judge assigned to the Superior Court.

mane Lahmamsi ("the Victim"). When Appellant asked the Victim if he had any marijuana connections, the Victim stated that he would be traveling to Miami to buy marijuana and, upon his return, would contact Appellant.

¶ 3 Soon thereafter, Appellant encountered Ronald Warrick. Warrick inquired as to whether Appellant knew where to obtain marijuana. Appellant replied that his friend was in Miami picking up drugs and that Appellant would arrange a meeting and/or sale.

¶ 4 On the date in question, Appellant contacted Warrick and advised him the drug deal would happen that day. The two men later rendezvoused. At some point on that same date, the Victim and Mochine El Joufri were riding in the Victim's car. The Victim mentioned the possibility of meeting Appellant and, during the ride, received two phone calls. After the first call, he told Joufri that he (the Victim) had six pounds of marijuana for Appellant. During the second call, Appellant gave the Victim directions to the location of the intended drug sale.

¶ 5 Prior to the arrival of the Victim and Joufri, Warrick indicated he was going to rob the seller. He also showed Appellant a gun. Warrick made indications that he would split the robbery proceeds with Appellant.

¶ 6 The Victim and Joufri arrived at the prearranged location, an alley, and, as they drove through it, Appellant waved at the car so that the Victim would stop. After the Victim stopped his car, Appellant and Warrick approached it. Both men entered the rear seat of the vehicle. Warrick then pulled a gun from his waist area and pointed the gun at the Victim. Appellant stepped outside the vehicle. Demanding

the car keys, Warrick told the Victim to pop the trunk. When the Victim and Joufri insisted they had no marijuana with them, Warrick threatened to shoot the Victim. Eventually, the Victim agreed to give Warrick the keys but, rather than doing so, stepped on the gas pedal of the car. Warrick then shot the Victim in the head. As a result of the gunshot, the Victim died. Appellant and Warrick left the scene together in a car. Joufri called emergency personnel.

¶ 7 Appellant fled to Georgia where he was eventually arrested. Thereafter, he told police he had arranged the intended drug sale at which the Victim was shot. He also indicated that, prior to arriving at the location of the intended sale, he knew the Victim was going to be robbed.

¶ 8 Following the aforesaid events, Appellant faced charges of homicide, robbery and conspiracy and he proceeded to a non-jury trial before the Honorable Lester Nauhaus. After both parties had rested, Appellant's counsel filed a motion to withdraw from representation and to reopen the testimony so that Appellant could testify. Judge Nauhaus granted the motion.

¶ 9 Prior to there being any testimony from Appellant, new counsel entered his appearance and, after Judge Nauhaus supposedly made certain remarks indicating his belief that Appellant was guilty, counsel expressed a concern that the judge was not impartial. Judge Nauhaus recused himself *sua sponte,* and the case was transferred to the Honorable John Reilly for the completion of testimony.

¶ 10 Appellant then moved for a mistrial and requested a new trial. He alleged, *inter alia,* that his jury waiver was only effective before Judge Nauhaus and, moreover, assuming he did proceed with a bench trial before Judge Reilly, it would be unfair to Appellant for Judge Reilly to use the written record of testimony to make credibility determinations for witnesses who had testified in the non-jury proceedings before Judge Nauhaus. Judge Reilly declared a mistrial.

¶ 11 Appellant then moved to bar the trial before Judge Reilly on double jeopardy grounds. In doing so, he asserted he had been forced to seek a mistrial because Judge Nauhaus had improperly expressed his opinion that Appellant was guilty. Appellant further contended that, due to the alleged misconduct by Judge Nauhaus, Appellant should not be forced to undergo a second trial.

¶ 12 Judge Reilly held a hearing on Appellant's motion. The record of that hearing contains conflicting evidence as to the precise content of Judge Nauhaus' comments which led to his recusal. It does not appear Judge Reilly made specific factual findings as to what Judge Nauhaus actually said. Appellant presented evidence from a third party that the third party overheard a conversation in the courtroom between Judge Nauhaus and Appellant's counsel in which the judge essentially commented that Appellant was going to be convicted of something. In his testimony before Judge Reilly, Judge Nauhaus seemed to acknowledge he made one or more comments to Appellant's counsel in the courtroom. However, the thrust of Judge Nauhaus' testimony was that he merely advised Appellant's counsel, who had just recently undertaken representation, there was strong evidence of felony murder. Judge Nauhaus also testified he brought Appellant's counsel and the prosecutor into chambers and voiced his concern that Appellant was facing a life sentence. Judge Nauhaus' testimony also revealed his concern that a life sentence might be unduly harsh given the case facts and the fact that Georgia police seemed to have promised Appellant he would not receive a life sentence.

¶ 13 Although Judge Reilly did not specify which account he accepted concerning Judge Nauhaus' comments, Judge Reilly did find that Judge Nauhaus had not engaged in any type of bad faith or other conduct intended to elicit a mistrial. Judge Reilly then denied the motion to bar Appellant's trial.

¶ 14 The case proceeded to a jury trial after which Appellant was found guilty of third degree murder. He was acquitted of robbery and conspiracy and was later sentenced.

¶ 15 Appellant filed a timely post-sentence motion to set aside the verdict due to juror misconduct. In the motion, he alleged a juror had contacted a certain Pittsburgh attorney subsequent to the return of the verdict and had indicated her concerns about the manner in which the verdict was reached. More particularly, the juror allegedly indicated one or more other jurors had conducted research and/or made comments, during deliberations, about Warrick's case.

¶ 16 Judge Reilly eventually held a hearing at which he questioned the jurors. Nine of them indicated they did not recall discussion during deliberations about any juror who had conducted any type of research outside of the courtroom. One juror recalled a fellow juror commenting that her husband had said something about the trial. The juror who heard this comment stated to one or more of the other jurors that the jury was not to consider such information. Another juror stated that she remembered some comments about the charges the codefendant faced. A third juror stated there had been limited remarks about the codefendant having been sentenced for second degree murder. The third juror also remembered a comment from someone that the jurors should not consider such information. Subsequent to the hearing, Judge Reilly

denied Appellant's request to set aside the verdict. His opinion indicated the extraneous information to which the jurors were exposed was vague, ambiguous and brief. Appellant then filed this timely appeal.

### Issue # 1: Sufficiency

¶ 17 Appellant argues the evidence was insufficient to prove he was an accomplice to third degree murder. We need not address the question of accomplice liability because the evidence was sufficient to support the conviction under conspiratorial liability.

¶ 18 A person commits criminal homicide by intentionally, knowingly, recklessly, or negligently causing the death of another person. 18 Pa.C.S.A. § 2501.

¶ 19 The murder statute provides the following:

(a) **Murder of the first degree.**—A criminal homicide constitutes murder of the first degree when it is committed by an intentional killing.

(b) **Murder of the second degree.**—A criminal homicide constitutes murder of the second degree when it is committed while defendant was engaged as a principal or an accomplice in the perpetration of a felony.

(c) **Murder of the third degree.**—All other kinds of murder shall be murder of the third degree. Murder of the third degree is a felony of the first degree.

18 Pa.C.S.A. § 2502.

¶ 20 Malice is an essential element of murder, including murder of the third degree. *Commonwealth v. Marquez,* 980 A.2d 145, 148 (Pa.Super.2009). Malice may be found where the actor consciously disregards an unjustified and extremely high risk that the actor's conduct might cause death or serious bodily injury. *Id.*

¶ 21 A person is guilty of an offense if the offense is committed by that person's conduct—that is, if the person is the principal actor. 18 Pa.C.S.A. § 306(a). However, a person who was not the principal actor may nonetheless be liable for the crime on the basis of conspiratorial liability. *Commonwealth v. Bradley*, 481 Pa. 223, 392 A.2d 688, 690 (1978).

¶ 22 In its essence, a conspiracy is an agreement to commit a crime. *Commonwealth v. Baskerville*, 452 Pa.Super. 82, 681 A.2d 195, 201 (1996). Circumstantial evidence, including the conduct and relation of the parties, is relevant to whether people are conspirators. *Id.* Each co-conspirator is liable for the actions of the others if those actions were in furtherance of the common criminal design. *Id.* Additionally, even where an individual conspirator does not contemplate killing the victim, the killing is not beyond the scope of the conspiracy if the killing is a natural and probable consequence of a co-conspirator's conduct. *Id.* As such, the members of the conspiracy can be held liable for the killing. *Id.*

¶ 23 In *Baskerville*, the appellant knew that a certain individual, John Haynes, had a gun. After the appellant and Haynes looked into a nearby car to determine the occupants, they walked away and Haynes asked the appellant whether the car occupants had been wearing jewelry. When the appellant indicated the occupants were wearing jewelry, Haynes asked the appellant to return to the car and ask one of the occupants for a cigarette. The appellant agreed and surmised that Haynes intended to rob the individuals. When the appellant asked the car passenger for a cigarette, Haynes pointed a gun at the driver and demanded jewelry. As the driver handed his watch to Haynes, the driver stepped on the gas pedal and tried to escape. Haynes then shot and killed the driver. On appeal, we found the appellant had entered a conspiracy to commit an armed robbery, the killing was a natural and probable consequence of the armed robbery and, as a conspirator, the appellant was liable for the killing carried out by his co-conspirator. *Id.* at 201.

¶ 24 We also keep in mind that consistency of verdicts is not required as long as there is sufficient evidence to support each verdict. *Commonwealth v. Kimbrough*, 872 A.2d 1244, 1255 (Pa.Super.2005).

¶ 25 Our review of sufficiency issues is as follows:

> When evaluating a sufficiency claim, our standard is whether, viewing all the evidence and reasonable inferences in the light most favorable to the Commonwealth, the factfinder reasonably could have determined that each element of the crime was established beyond a reasonable doubt. *Commonwealth v. Pitner*, 928 A.2d 1104, 1108 (Pa.Super.2007). This Court considers all the evidence admitted, without regard to any claim that some of the evidence was wrongly allowed. *Id.* We do not weigh the evidence or make credibility determinations. *Id.* Moreover, any doubts concerning a defendant's guilt were to be resolved by the factfinder unless the evidence was so weak and inconclusive that no probability of fact could be drawn from that evidence. *Id.*

*Commonwealth v. Habay*, 934 A.2d 732, 735 (Pa.Super.2007).

¶ 26 Initially, we point out Appellant does not suggest the killing committed by Warrick lacked malice or was otherwise insufficient to constitute third degree murder. Indeed, pointing a gun at someone during a robbery and then shooting the person surely constitutes malice. The

question is whether Appellant is liable for Warrick's actions.

¶ 27 Knowing Warrick had a weapon, and having been advised that Warrick intended to rob the Victim at gunpoint, Appellant flagged down the Victim's car and entered the car with Warrick under the guise of proceeding with a drug sale. The evidence also revealed Appellant expected Warrick to share the proceeds of the robbery. Viewed most favorably to the Commonwealth, this evidence supports the conclusion that Appellant and Warrick were co-conspirators in the robbery. Even if Appellant did not necessarily anticipate that Warrick would kill the Victim, the killing was a natural and probable consequence of the armed robbery in which Appellant and Warrick conspired. Accordingly, Appellant is liable for the murder committed by Warwick.

¶ 28 We are quite aware the jury acquitted Appellant of the conspiracy charge. The acquittal on that count and the jury's reasons for it are of no moment to us. Because the evidence of record was sufficient to establish conspiratorial liability and conspiratorial liability was a legally sufficient theory which could be applied to the murder charge, there is no basis to disturb Appellant's conviction.[1] Simply put, the jury had a sufficient evidentiary basis upon which to conclude Appellant was liable for third degree murder as a co-conspirator. We do not know, and cannot care, why the jury acquitted him of conspiracy. Therefore, his sufficiency claim fails.

### Issue # 2: Double Jeopardy

¶ 29 Appellant poses two alternative arguments as to why his trial before Judge Reilly should have been barred by virtue of double jeopardy. First, he complains that, after Judge Nauhaus reopened testimony so that Appellant could testify, but before Appellant took the stand, Judge Nauhaus indicated to Appellant's counsel that Appellant was guilty of one or more charges. Appellant argues such statements by the judge were improper and forced Appellant into asking for a mistrial based on Judge Nauhaus' bias. Appellant thus contends that, because he was forced into asking for a mistrial due to this bias, the trial before Judge Reilly was prohibited.

¶ 30 Alternatively, Appellant contends that, if Judge Nauhaus believed he was impartial, he should not have recused himself or, at least, should not have done so without considering less drastic actions. Once again, Appellant asserts he was forced into moving for a mistrial. On this point, we recall Appellant's motion for a mistrial filed in the trial court argued that his jury waiver was only effective as to a trial before Judge Nauhaus and that the judge to whom the case was transferred after recusal (i.e., Judge Reilly) could not make proper credibility determinations without having observed the demeanor of the witnesses while they testified. Thus, Appellant made the point that the recusal led inevitably to his mistrial request and, once again, he should not have been retried.

---

1. We are aware the parties argue primarily about accomplice liability and, at first blush, numerous published opinions seem to support a quick finding that Appellant could be convicted as an accomplice to third degree murder. However, there is a logical problem which those cases were not required to address. More specifically, accomplice liability is generally premised on the intent to promote or facilitate a crime, see 18 Pa.C.S.A. § 306(c), while third degree murder is an unintentional killing. It is not logically possible to intend an unintentional act. Because of our resolution of this case, we need not address that problem.

■ ¶ 31 When Judge Nauhaus recused himself, Appellant did not object. Thus, he waived the argument that the recusal was inappropriate. The argument which Appellant did raise in the trial court was that Judge Nauhaus' recusal was necessitated by his alleged misconduct (*i.e.*, making biased comments) and that the retrial should thus be barred.[2] Finally, as our ensuing discussion will show, Appellant would not be entitled to relief on the merits of either argument, even if they were both preserved.

■ ¶ 32 At this juncture, we must review a number of legal principles. When a trial court doubts its ability to preside impartially in a criminal case or when the court believes its impartiality can be reasonably questioned, the court should recuse itself. *Commonwealth v. Tedford*, 598 Pa. 639, 960 A.2d 1, 55 (2008). The recusal decision will be disturbed on appeal only if the trial court abused its discretion. *Id.* An abuse of discretion is not merely an error in judgment. *Commonwealth v. Dorm*, 971 A.2d 1284, 1288 (Pa.Super.2009). Rather, it involves bias, ill will, manifest unreasonableness, misapplication of law, partiality, and/or prejudice. *Id.* Additionally, a court's inability or appearance of inability to proceed impartially and the consequent need for recusal constitute manifest necessity for a mistrial. *Commonwealth v. Leister*, 712 A.2d 332, 335 (Pa.Super.1998). Where such a manifest necessity for a mistrial exists, a retrial is not barred by principles of double jeopardy. *Id.* at 336.

■ ¶ 33 Under either account of Judge Nauhaus' comments, it is apparent that Judge Nauhaus' conduct was designed merely to afford Appellant's counsel, who had just entered the case, general information about the very significant risks Appellant faced. When the court advised counsel about its concerns, it is plain that the judge was acting in his judicial capacity and not as a factfinder who had prematurely decided the case. Therefore, we find nothing improper in the court's comments to Appellant's counsel. Nevertheless, because the judge did express some concern about the possibility of Appellant's guilt and because Appellant's counsel had concern about the court's impartiality, Judge Nauhaus' decision to recuse himself was proper in order to avoid even the appearance of partiality. Similar to Judge Reilly, we simply find no evidence of bias, ill will, manifest unreasonableness, misapplication of law, partiality, or prejudice so as to constitute an abuse of discretion by Judge Nauhaus. Additionally, because Appellant's complaint about the judge's comments went directly to his ability to be objective, we think recusal was the only reasonable option. Appellant does not offer and discuss how some less drastic alternative would have been appropriate.

■ ¶ 34 Additionally, we agree with Appellant's contention that the recusal led inevitably to a mistrial because Judge Reilly could not possibly have made fully informed credibility determinations without observing the demeanor of the witnesses and because Appellant wished to be tried before a jury. Given that Judge Nauhaus did not act improperly during the events

---

**2.** Even as to this latter argument, it is arguable that Appellant waived his right to pursue it in on appeal after judgment of sentence because he did not file an appeal immediately upon denial of his pretrial motion. *Commonwealth v. Dimmig*, 310 Pa.Super. 92, 456 A.2d 198, 199–200 (1983). Neither party has briefed this issue and, based on the facts of this case, it is clear to us that Appellant's argument cannot succeed. Accordingly, we decline to find waiver and we will address the merits of the claim. *Id.; Commonwealth v. Edwards*, 264 Pa.Super. 223, 399 A.2d 747, 749 n. 2 (1979).

leading up to the recusal, and that he did not abuse his discretion in recusing himself, and given that the recusal led to the mistrial, we find the retrial was not barred by double jeopardy principles.

### Issue # 3: Juror Misconduct

¶ 35 A court may take evidence concerning extraneous influences that may have affected the jury's deliberations. *Commonwealth v. Neff*, 860 A.2d 1063, 1069 (Pa.Super.2004). Extraneous influences include information not provided in court. *Id.* Once the existence of extraneous influences is established, a court must consider whether the extraneous influence relates to a central issue, whether the influence provided the jury with information not also presented at trial, and whether the influence was emotional or inflammatory in nature. *Id.* When considering these factors, the question is whether and how an objective juror would have been influenced. *Id.* A court's refusal to grant a new trial based on juror misconduct is within that court's discretion. *Commonwealth v. Russell*, 445 Pa.Super. 510, 665 A.2d 1239, 1243 (1995).

¶ 36 In the present case, the court took evidence concerning the extraneous information provided to the jurors. Having reviewed the testimony from the jurors, it appears three of them were exposed to some extraneous information. The exposure was brief. Additionally, at least one of the jurors reminded the others that the jury was not to consider such information. Moreover, to the extent we can determine the information to which the jury was exposed, Appellant has not convinced us it would have been emotional or inflammatory to an objective juror. Accordingly, we find no abuse by the trial court in denying the motion to set aside the verdict.

¶ 37 We recognize that, to some extent, the trial court's opinion seemed to consider the actual, subjective impact on the particular jurors in this case. Appellant is correct that the test is an objective one. Nevertheless, the court's evaluation of the jurors' testimony persuades us that the court sufficiently evaluated the extraneous information so as to find it non-prejudicial in an objective sense. In short, we see no basis to disturb the court's ruling. Therefore, Appellant's claim fails.

¶ 38 Based on the foregoing discussion, we affirm the judgment of sentence.

¶ 39 Judgment of sentence affirmed.

¶ 40 Judge SHOGAN concurs in the result.