J-S70033-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| JACQUELINE SOLER | |
| Appellant | No. 2005 EDA 2014 |

Appeal from the Judgment of Sentence March 14, 2014
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0009437-2012

BEFORE: DONOHUE, J., LAZARUS, J., and PLATT, J.[*]

MEMORANDUM BY LAZARUS, J.: **FILED DECEMBER 02, 2015**

Jacqueline Soler appeals from the judgment of sentence entered in the Court of Common Pleas of Philadelphia County following a jury trial[1] in which she was convicted of arson,[2] criminal conspiracy,[3] and hindering prosecution.[4] After our review, we affirm.

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] Ms. Soler was tried with her brother, co-defendant Daniel Soler, who was convicted of third-degree murder, arson, criminal conspiracy, and firearms charges. Mr. Soler has filed a separate appeal at docket number 2073 EDA 2014.

[2] 18 Pa.C.S. § 3301(a)(1).

[3] 18 Pa.C.S. § 903.

[4] 18 Pa.C.S. § 5105.

The trial court summarized the facts of this matter as follows:

On Saturday, March 31, 2012, Tanisha Carr contacted co-defendant Daniel Soler ("Mr. Soler"), with whom she had two children, in order to meet and talk about $500 which she had loaned Mr. Soler. Carr arranged to meet Mr. Soler at 52nd Street in Philadelphia. Carr and Mr. Soler shared custody of their daughter, D.S.[,] and their son, D.S.J., who stayed with Carr during the week and with Mr. Soler over the weekends. That evening, Mr. Soler questioned D.S. concerning Carr's new boyfriend. At approximately 10:30 p.m., Mr. Soler called his children into his room, where he stated that he would be going somewhere. While Mr. Soler was talking with his children, D.S.J. reached into Mr. Soler's coat, which permitted D.S. to see a concealed gun. Mr. Soler stated, "I love you no matter what happens," gave his children a hug and a kiss, and then left the house.

Carr had arranged to telephone her sister, Tamika McDuffie, upon arriving at the meet location, which she did at 11:43 p.m. Upon calling McDuffie, Carr stated, "here comes Danny," and then left the phone active, permitting her sister to listen in on their conversation. McDuffie was able to hear Carr state, in a scared tone, "where are we going?" The last words McDuffie heard Carr state [were]: "Never mind, I don't want the money, just give me my keys so I can go home." Following this statement, the phone went dead and repeated calls by McDuffie were unanswered.

Thereafter, Mr. Soler called his sister, [Ms. Soler], informing her that he had just killed a ["man"] and was driving a car with the body in it. Mr. Soler asked [Ms. Soler] where she was, and [she] informed him that she would be at their cousin Freddie's[5] home, located at 4435 North 4th Street, Philadelphia.

At approximately midnight, defendant called Aura Bernard, who lived in Freddie's house and was Freddie's girlfriend, asking to come over. [Ms. Soler] was emotional when making this call. Shortly after calling, [Ms. Soler], accompanied by her boyfriend

_____

[5] Freddie's real name is Roberto Soler.

Carlos, arrived at Freddie's home. Mr. Soler parked the vehicle with Carr's body at 4519 North 3rd Street, Philadelphia, which is a mixed commercial and residential area, at 12:30 a.m., April 1, 2012, and arrived at Freddie's home shortly thereafter. Present in the home were [Ms. Soler], Carlos, Mr. Soler, Freddie, and Bernard, while Bernard's children were asleep upstairs.

While at Freddie's home, Mr. Soler repeatedly commented that he had "fucked up" and that he was "not going to see [his] kids." Rather than admit that he had killed Carr, Mr. Soler falsely stated that he had "got the guy that killed Josue"[6] and that he "had him in the car." Mr. Soler then asked if Bernard had any gas, stating that he intended to burn the car to get rid of the evidence. Bernard, being the only individual with a car, stated that she would go get some gasoline, using an empty corn oil container from the kitchen. [Ms. Soler] stated that she would accompany Bernard.

At approximately 1:48 a.m., [Ms. Soler] and Bernard arrived at the 7-Eleven convenience store at the corner of Rising Sun Avenue and Wyoming Avenue. While purchasing gas at the store, [Ms. Soler] and Bernard also purchased Red Bull energy drinks and cigarettes. However, as the cost of these items and the gas exceeded the cash that Bernard had brought with her, [Ms. Soler] paid the remaining balance with her credit card. Bernard then filled the oil container with gas, as well as filling her own car, before returning to her home with [Ms. Soler]. Upon returning home, Bernard told Mr. Soler that the gas was in the car. [Ms. Soler], Bernard, and Mr. Soler then returned to the car, where Bernard used a rag to wipe her fingerprints from the oil container, and gave the container to Mr. Soler.

While everyone else remained at the house, Mr. Soler left with the gas. Mr. Soler then returned to the vehicle with Carr's body, poured the gas on the car, on the floor of the car, and on Carr's body before using a lighter to light the gas. Mr. Soler lit the fire at approximately 2:19 a.m. Approximately fifteen minutes after leaving the house with the gas, Mr. Soler returned to Freddie's home.

_____

[6] Josue is Mr. Soler's brother who was murdered previously.

Upon Mr. Soler's return, [Ms. Soler], Carlos, Bernard, Freddie, and Mr. Soler went into the basement of the home. While in the basement, Mr. Soler had a nine millimeter handgun in his hands. Bernard then noticed that Mr. Soler's clothes had bloodstains on them. [Ms. Soler] told Mr. Soler that he needed to change his clothes. Mr. Soler then took a shower, changing into clothing provided by Freddie. A short time later, [Ms. Soler], Mr. Soler, and Carlos all left the house in a taxi cab.

. . .

At approximately noon, [Ms. Soler] called Bernard and informed her that Mr. Soler hadn't killed [Josue's killer], but that he had killed "his baby mom" and had "burned her and stuff." Later that evening, police contacted [Ms. Soler], requesting that she meet with them to provide a statement. In her statement, [Ms. Soler], stated that [Mr. Soler] had contacted her, stating that he killed a man and intended to burn the car with gasoline. [Ms. Soler] further stated that [Mr. Soler] had contacted her again, stating that he had set the car on fire and "that it was done." [Ms. Soler] stated that when she had found out earlier that morning that Carr had been killed, she "had put two and two together and realized he must have been talking about [Carr.]"

. . . Early in the morning of April 5, 2012, [Ms. Soler] was transported to police headquarters, where she provided another statement, including details that she had omitted from her earlier statement.

Trial Court Opinion, 9/30/14, at 2-6 (citations omitted).

Following trial, Ms. Soler was sentenced on March 14, 2014. Her sentence included three to six years' incarceration for arson, one and one-half to three years' incarceration for conspiracy, and six to twelve months' incarceration for hindering prosecution. Ms. Soler was sentenced to serve each sentence consecutively for an aggregate sentence of five to ten years' incarceration. Ms. Soler filed post-sentence motions on March 17, 2014, which were denied on June 23, 2014. This timely appeal followed.

Ms. Soler raises the following issues for our review, which we have renumbered for ease of disposition:

1. Did the Commonwealth establish beyond a reasonable doubt that [Ms. Soler] conspired with co-Defendant Danny Soler and/or Aura Bernard to commit arson[?]

2. Did the Commonwealth establish beyond a reasonable doubt that [Ms. Soler] aided, counseled, paid or agreed to pay another to cause a fire[?]

3. Did the Commonwealth establish beyond a reasonable doubt that [Ms. Soler] concealed or destroyed evidence of a crime or tampered with a witness, informant, document or other source of information, with the intent to hinder apprehension or prosecution of another[?]

4. Even assuming *arguendo* that [Ms. Soler] agreed to aid Aura Bernard with arson, does [Ms. Soler's] sentence of 1.5-3 years on the conspiracy charge, imposed consecutively to the 3-6 year sentence on the arson, amount to additional punishment for the same actions[?]

Brief for Appellant, at 8 (citations and quotation marks omitted).

Ms. Soler's first three issues are challenges to the sufficiency of the evidence regarding the crimes for which she was convicted. In considering such claims,

> we must determine whether the evidence admitted at trial, and all reasonable inferences drawn therefrom, when viewed in a light most favorable to the Commonwealth as verdict winner, support the conviction beyond a reasonable doubt. . . . Where there is sufficient evidence to enable the trier of fact to find every element of the crime has been established beyond a reasonable doubt, the sufficiency of the evidence claim must fail. Of course, the evidence established at trial need not preclude every possibility of innocence and the fact-finder is free to believe all, part, or none of the evidence presented.

*Commonwealth v. Watley*, 81 A.3d 108, 113 (Pa. Super. 2013) (en banc). The Commonwealth can satisfy its burden via wholly circumstantial evidence. *Id.*

First, Ms. Soler challenges the sufficiency of the evidence regarding her conviction for conspiracy. To find that a defendant is guilty of conspiracy, the following must be determined by the fact-finder:

> (1) the defendant intended to commit or aid in the commission of the criminal act; (2) the defendant entered into an agreement with another (a "co-conspirator") to engage in the crime; and (3) the defendant or one or more of the other co-conspirators committed an overt act in furtherance of the agreed upon crime.

*Commonwealth v. Murphy*, 844 A.2d 1228, 1238 (Pa. 2004). In most cases, direct evidence of the defendant's criminal intent or agreement to commit a crime does not exist. *Id.* Thus, "the defendant's intent as well as the agreement is almost always proven through circumstantial evidence, such as by 'the relations, conduct or circumstances of the parties or overt acts on the part of the co-conspirators.'" *Id.* (quoting *Commonwealth v. Spotz*, 716 A.2d 580, 592 (Pa. 1998)).

Here, the record reveals that Ms. Soler conspired with Daniel Soler and Aura Bernard to commit arson. Ms. Soler provided her location to Mr. Soler, and once he arrived, the three individuals immediately had a discussion concerning the steps necessary to hide evidence of the murder Mr. Soler had committed. Mr. Soler decided to burn Carr's vehicle to destroy the evidence but indicated he needed gasoline to do so. As a result of the conversation, Ms. Soler went with Bernard to purchase gasoline at a 7-Eleven store.

Bernard began purchasing approximately $25.00 of gasoline and energy drinks and cigarettes. Bernard did not have enough cash, however, so Ms. Soler used her credit card to pay for the remaining balance and her own cigarettes. They returned and gave the gasoline to Mr. Soler. Thus, the circumstances demonstrate Ms. Soler's intent and agreement with the others to set the car on fire. **Murphy**, **supra**. The purchase of gasoline and the actual arson committed by Mr. Soler satisfy the overt act element of conspiracy. Accordingly, Ms. Soler's sufficiency claim regarding conspiracy fails.

Next, Ms. Soler challenges the sufficiency of the evidence regarding her conviction for arson. To commit arson endangering persons, a defendant must have "intentionally started the fire or caused the explosion and thereby recklessly placed another person in danger of death or bodily injury, including but not limited to a firefighter, police officer or other person actively engaged in fighting the fire." **Commonwealth v. Blystone**, 617 A.2d 778, 780 (Pa. Super. 1992) (citing 18 Pa.C.S. § 3301(a)(1)(i)). Where a conspiracy has been formed, "[e]ach co-conspirator is liable for the actions of the others if those actions were in furtherance of the common criminal design." **Commonwealth v. King**, 990 A.2d 1172, 1178 (Pa. Super. 2010). Similarly, accomplice liability arises if a defendant intended to aid the principal and "actively participated in the crime by soliciting, aiding, or agreeing to aid the principal." **Murphy**, **supra** at 1234.

Ms. Soler makes no argument regarding whether an arson was committed or that the fire placed another person in danger. Ms. Soler merely argues that she "had no involvement in the setting of the fire, nor in any steps leading up to arson." Brief of Appellant, at 14. The assertion that Ms. Soler had no involvement in the steps taken to complete the arson is belied by the record. Ms. Soler participated in the discussion in which Mr. Soler decided to commit arson, accompanied Bernard to a 7-Eleven store, and paid for a portion of the gasoline that was used to start the fire. We note that the amount of aid an accomplice provides "need not be substantial so long as it was offered to the principal to assist him in committing or attempting to commit the crime." *Murphy*, *supra* at 1234. Moreover, Ms. Soler is liable for the arson since she was convicted of conspiracy and the arson was completed in furtherance of the conspiracy.[7] *King*, *supra*. Therefore, Ms. Soler's sufficiency claim regarding arson lacks merit.

---

[7] We note that the facts underlying Ms. Soler's role in the conspiracy and as an accomplice are the same. However, "the same facts may support multiple convictions and separate sentences for each conviction except in cases where the offenses are greater and lesser included offenses." *Commonwealth v. Thomas*, 879 A.2d 246, 263 (Pa. Super. 2005). Conspiracy is not a lesser included offense of arson that merges for the purpose of sentencing. *See Commonwealth v. Miller*, 364 A.2d 886, 888 (Pa. 1976) (conspiracy is not merely lesser crime included in completed underlying offense).

Ms. Soler also challenges the sufficiency of her conviction for hindering prosecution. A person commits the crime of hindering prosecution if, with the intent to obstruct prosecution, he or she "conceals or destroys evidence of the crime, or tampers with a witness, informant, document or other source of information, regardless of its admissibility in evidence." 18 Pa.C.S. § 5105(a)(3). The crime is graded as a felony, as it was in this matter, when the person acted to hinder prosecution of a crime that would constitute a felony of the first or second degree. 18 Pa.C.S. § 5105(b).

Instantly, the entire conspiracy to commit arson was designed to conceal evidence of the murder committed by Mr. Soler. As detailed above, Ms. Soler was a participant in the conspiracy, particularly in discussing the cover-up and helping to procure gasoline to effectuate the arson. Ms. Soler also urged Mr. Soler to change his clothes after the murder because they had blood on them. Thus, Ms. Soler had the requisite intent and took action to conceal evidence of a crime. As to the grading of the offense as a felony, Ms. Soler's contention that she did not know murder is a felony is unpersuasive. *See Commonwealth v. Lore*, 487 A.2d 841, 854 (Pa. Super. 1984) (defendant's acts of concealment with knowledge that her boyfriend shot and killed victim was sufficient to grade hindering prosecution as felony). Accordingly, Ms. Soler's sufficiency claim regarding hindering prosecution fails.

Finally, Ms. Soler asserts that her sentence is inequitable because it includes consecutive periods of incarceration for conspiracy and arson.[8] However, this claim is waived because Ms. Soler failed to include in her brief a separate statement of reasons why this court should grant review of her challenge to the discretionary aspects of sentencing, and the Commonwealth has objected.[9] *See Commonwealth v. Brougher*, 978 A.2d 373, 375 (Pa. Super. 2009) ("claims relating to the discretionary aspects of a sentence are waived if an appellant does not include a Pa.R.A.P. 2119(f) statement in his brief and the opposing party objects to the statement's absence").

Judgment of sentence affirmed.

_____

[8] Though Ms. Soler presents this issue as a challenge to the discretionary aspects of her sentence rather than a challenge to the legality of her sentence, we note that consecutive sentences for conspiracy and arson are legal. *See* n. 7, *supra*.

[9] Absent waiver, Ms. Soler's claim would fail. Ms. Soler baldly asserts that her sentence is excessive because the "underlying actions that tend to substantiate each offense are identical." Brief for Appellant, at 16. Nevertheless, Ms. Soler admits that the sentencing court has discretion to impose sentences concurrently or consecutively and concedes that the crimes of conspiracy and arson are distinct. Thus, Ms. Soler's claim is unreviewable, since it fails to raise a substantial question that the sentence appealed from is not appropriate under the sentencing code. *See Commonwealth v. Caldwell*, 117 A.3d 763, 769 (Pa. Super. 2015) (en banc) ("A court's exercise of discretion in imposing a sentence concurrently or consecutively does not ordinarily raise a substantial question.").

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/2/2015