J-S02017-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| KARAUN JONES | |
| Appellant | No. 3412 EDA 2014 |

Appeal from the Judgment of Sentence November 6, 2014
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0002868-2014,
CP-51-CR-0002869-2014, CP-51-CR-0003339-2014

BEFORE:  SHOGAN, J., LAZARUS, J., and STABILE, J.

MEMORANDUM BY LAZARUS, J.:                    **FILED April 27, 2016**

Karaun Jones appeals from the judgment of sentence entered in the Court of Common Pleas of Philadelphia County following a non-jury trial[1] in which he was convicted of aggravated assault,[2] robbery,[3] and criminal conspiracy.[4]  After careful review, we affirm.

The trial court summarized the facts of this matter as follows:

---

[1] Jones was tried with his co-defendant, Jeremy Brown, who has filed a separate appeal at docket number 3598 EDA 2014.

[2] 18 Pa.C.S. § 2702(a)(1).

[3] 18 Pa.C.S. § 3701(a)(1)(ii).

[4] 18 Pa.C.S. § 903(c).

At trial, the Commonwealth first presented the testimony of Philadelphia Police Officer Jeffrey McMahon. Officer McMahon testified that, on January 13, 2014, at approximately 7:30 p.m., he received a radio call directing him to the 2400 block of North 22nd Street in Philadelphia. There, he encountered the complainant, Joel Flowers, lying in the street, suffering from a gunshot wound. Based on information gathered from Mr. Flowers, Officer McMahon submitted flash information describing the perpetrators as two black males, both 20 years old and wearing black hooded sweatshirts, one armed with a black revolver. Officer McMahon then transported Mr. Flowers to Temple University Hospital for treatment. He testified that two individuals matching the descriptions – [Jones] and Co-Defendant Jeremy Brown – were brought to the hospital for identification, and Mr. Flowers positively identified them as his assailants.

Philadelphia Police Officer Damien Stevenson testified next for the Commonwealth. Officer Stevenson testified that on January 13, 2014, at approximately 7:30 p.m., he received a radio call of a shooting, directing him to the 2400 block of North 22nd Street. Approximately one minute later, the Tactical Aviation Unit (police helicopter), reported that it was following two males walking southbound on the 2000 block of North 23rd Street, one of whom just crossed to the other side of the street. Officer Stevenson immediately proceeded to that location, where he encountered [Jones] on the east side and Co-Defendant Brown on the west side of the street. He ordered the males to stop, at which time Co-Defendant Brown took off running, while [Jones] froze in place. Back-up officers apprehended [Jones], while Officer Stevenson pursued Co-Defendant Brown on foot. With the assistance of police helicopter, Officer Stevenson apprehended Co-Defendant Brown inside an alley between 23rd and Crosby Streets.

The Commonwealth next presented eyewitness Rasheia Lyles. Ms. Lyles testified that on January 13, 2014, at approximately 7:30 p.m., she was walking northbound on the 2400 block of North 22nd Street, when she observed three males in close proximity to each other. At first blush, she thought the males were friends; within seconds, however, she heard a gunshot, and saw the complainant, Joel Flowers, running toward her, with the two other males fleeing in the opposite direction.

She testified that Mr. Flowers collapsed to the ground, clutching his right bicep and yelling "my arm, my arm." Ms. Lyles called the police, who arrived at the scene shortly thereafter. Upon providing physical descriptions to the police, she was transported to 23rd and Diamond Streets, where she positively identified Co-Defendant Brown as one of the assailants.

Additionally, at 8:05 p.m. on the same date – i.e., 35 minutes after the incident – Ms. Lyles was interviewed by Philadelphia Police Detective Martin. According to her recorded statement, which she signed and adopted at 8:58 p.m., she not only provided physical descriptions of both perpetrators, but positively identified them as well[.]

. . .

Ms. Lyles changed her tune at trial, however, claiming that she never provided a description of [Jones] or identified him to police because she allegedly "never saw his face." . . . [Lyles also stated that she knew his family and] "didn't learn that was him out there that night until I came here today."

. . .

The Commonwealth also called Detective Paul Wong to the stand. Detective Wong testified that, approximately two hours after his arrest, Jones provided a statement in which he claimed that he saw another male "running fast" on 22nd Street, and decided to run with him, even though he didn't know what happened[.]

. . .

Finally, the Commonwealth presented the complainant, Joel Flowers. Mr. Flowers testified that on January 13, 2014, he was walking on the 2400 block of North 22nd Street, when two males – whom he identified as [Jones] and Co-Defendant Brown – walked toward him from the opposite direction. When [Jones] and Co-Defendant Brown walked past him, Mr. Flowers heard "Yo," prompting him to turn around, at which point Co-Defendant Brown leveled a revolver at his face and said, "Give me what you got." [Jones] stood next to Co-Defendant Brown as he pointed the gun; Mr. Flowers reached into his pockets, pulled out his hands, and with his palms up, said, "I ain't have nothing." When he turned to walk away, [Brown] shot him in

the right bicep. The two bandits then fled southbound on 22nd Street, and Mr. Flowers collapsed to the ground.

Mr. Flowers testified that he then was approached by a woman (Ms. Lyles), who called the police and stayed with him until they arrived. After describing his assailants to police, he was transported to the emergency room at Temple University Hospital. Within two hours of the robbery, Mr. Flowers positively identified [Jones] and Co-Defendant Brown as his assailants, and also positively identified them in court.

Trial Court Opinion, 7/2/15, at 2-7 (citations and footnote omitted).

Jones was sentenced on November 6, 2014, to an aggregate term of three-and-one-half to seven years' incarceration. Jones timely filed a notice of appeal and court-ordered concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). Jones raises the following issue for our review:

Was the evidence insufficient to sustain a conviction of robbery, aggravated assault and conspiracy?

Brief for Appellant, at 3.

In considering sufficiency of the evidence claims, we must determine

whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances.

*Commonwealth v. Knox*, 50 A.3d 749, 754 (Pa. Super. 2012), *affirmed* 105 A.3d 1194 (Pa. 2014). The Commonwealth can satisfy its burden via wholly circumstantial evidence. *Id.*

Because Brown performed the actual criminal acts of demanding items from Flowers and shooting Flowers, Jones' convictions are based solely on a conspiracy or accomplice liability theory. To find that a defendant is guilty of conspiracy, the following must be determined by the fact-finder:

> (1) the defendant intended to commit or aid in the commission of the criminal act; (2) the defendant entered into an agreement with another (a "co-conspirator") to engage in the crime; and (3) the defendant or one or more of the other co-conspirators committed an overt act in furtherance of the agreed upon crime.

*Commonwealth v. Murphy*, 844 A.2d 1228, 1238 (Pa. 2004). In most cases, direct evidence of the defendant's criminal intent or agreement to commit a crime does not exist. *Id.* Thus, "the defendant's intent as well as the agreement is almost always proven through circumstantial evidence, such as by 'the relations, conduct or circumstances of the parties or overt acts on the part of the co-conspirators.'" *Id.* (quoting *Commonwealth v. Spotz*, 716 A.2d 580, 592 (Pa. 1998)).

Where a conspiracy has been formed, "[e]ach co-conspirator is liable for the actions of the others if those actions were in furtherance of the common criminal design." *Commonwealth v. King*, 990 A.2d 1172, 1178 (Pa. Super. 2010). Similarly, accomplice liability arises if a defendant intended to aid the principal and "actively participated in the crime by

- 5 -

soliciting, aiding, or agreeing to aid the principal." ***Murphy***, ***supra*** at 1234.

In order

> [t]o establish complicity, mere presence at the scene of a crime and knowledge of the commission of criminal acts is not sufficient. Nor is flight from the scene of a crime, without more, enough. However, those factors combined, along with other direct or circumstantial evidence may provide a sufficient basis for a conviction, provided the conviction is predicated upon more than mere suspicion or conjecture.

***Knox***, ***supra*** at 756.

Here, the evidence at trial, when viewed in the light most favorable to the Commonwealth, established the following: Jones was walking with Brown,[5] and after they walked past Flowers, Brown accosted Flowers from behind, attempted to rob him, and shot him in the arm. Jones was standing beside Brown during the incident and then ran following the gunshot. After the shooting, Jones initially ran in the same direction as Brown before separating from Brown. The trial court interpreted the above evidence as demonstrating that Jones' actions were "synchronized" with Brown's and

_____

[5] Flowers testified that immediately prior to Brown committing the robbery, Jones was walking with Brown. Lyles testified that from her perspective, the three men appeared to be walking together with Jones trailing behind Brown and Flowers. In his statement to police, admitted as Commonwealth's Exhibit 10, Jones indicated that "I ran into [Brown] at 22nd Street. I didn't see what happened, I saw him running fast. I hea[r]d gunshot." Exhibit C-10. Thus, viewing the evidence in the light most favorable to the Commonwealth, and as the trial court determined as fact-finder, Jones and Brown walked together toward Flowers prior to the attempted robbery.

"established that [Jones] manifested a clear intent to facilitate the crimes." Trial Court Opinion, 7/2/15, at 13.

Through circumstantial evidence, the record supports the determination that Jones and Brown were in agreement with each other to commit the crimes in this matter. **Murphy**, **supra**. Thus, the trial court, sitting as fact-finder, reasonably inferred that a conspiracy existed[6] between Jones and Brown. **Knox**, **supra**. Additionally, the victim identified Jones as one of the assailants. **See Commonwealth v. Johnson**, 402 A.2d 507, 509 (Pa. Super. 1979) (conspiracy could be inferred where defendant was identified as one of several perpetrators and "was one of the men who came into the [] room along with the others, witnessed the entire incident and fled with the assailants").

As a member of the conspiracy, Jones became criminally liable for all actions taken in furtherance of the conspiracy. **See**, **e.g.**, **Commonwealth v. McCall**, 911 A.2d 992, 997 (Pa. Super. 2006). Thus, Jones was properly convicted of assault and robbery charges in addition to the charge of criminal conspiracy, and his sufficiency argument is without merit.

Judgment of sentence affirmed.

---

[6] We note that the evidence in this matter is essentially the minimum quantum of evidence needed to find that a conspiracy existed, and because "we may not weigh the evidence and substitute our judgment for the fact-finder," **Knox**, **supra** at 754, we must affirm the determination of the trial court.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>4/27/2016</u>