J-S05010-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JAMAL WASHINGTON | : | |
| | : | |
| Appellant | : | No. 876 EDA 2020 |

Appeal from the Judgment of Sentence Entered February 12, 2020
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0004885-2017

BEFORE: BOWES, J., LAZARUS, J., and McLAUGHLIN, J.

MEMORANDUM BY BOWES, J.:                        **FILED MAY 25, 2021**

Jamal Washington appeals from the judgment of sentence of six to twelve years of incarceration imposed after his non-jury conviction of burglary. We affirm.

The trial court offered the following summary of the underlying facts of the case:

> On the evening of January 3, 2017, Marcella Vance watched movies with her cousin, Jessica Kidd, and her paramour, the decedent Darryl "Kwan" Curtis, in the back room of her apartment located at 8039 Erdrick Street in Northeast Philadelphia. Vance shared the apartment with her roommate Nashieta [Noland], who was present in the front room with her paramour, [Appellant]. At approximately 8:30 p.m., Vance left the apartment to drive Kidd home. Shortly thereafter, both Noland and [Appellant] left the apartment, leaving the decedent alone inside.
>
> Between 7:52 p.m. and 8:24 p.m., [Appellant] received multiple phone calls from [an] individual named Robert Thorogood and co-defendant Andrew Holder. At 8:24 p.m., [Appellant] called Holder. Holder, who was wearing a global position-tracking

electronic monitor while under the supervision of state parole, travelled to the area of 8039 Erdrick Street. There, he and an unidentified individual met [Appellant], and all three walked together in the apartment, which Holder entered at 9:35 p.m., armed with a pistol. Inside, Holder searched a safe inside Noland's room and encountered the decedent inside Vance's bedroom. There, he shot and killed the decedent.

Detective Thorsten Lucke, an expert in both video surveillance recovery and cell phone data extraction, recovered video surveillance recordings from private residences at 8052 and 8045 Erdrick Streets, along with video recorded from a church located at the corner of W[e]lsh and Erdrick Streets. Surveillance footage recovered from the corner of Erdrick and W[e]lsh Streets depicted two vehicles make a left-hand turn from W[e]lsh Street onto Erdrick, in the directions of the apartment. The camera located at 8052 Erdrick Street captured video of [Appellant], Holder, and another individual walking down Erdrick Street at 9:32 p.m. towards the decedent's location, before disappearing from view. At 9:34 p.m., the cameras at 8052 Erdrick Street recorded [Appellant] speaking on a cellular device while walking back towards Welsh Street, away from the crime scene. At 9:38 p.m., both cameras captured Holder, armed with a pistol, running away from the murder scene with the unidentified individual. Holder's positive identity was captured as he ran past the camera located at 8052 Erdrick Street at 9:39 p.m.

Vance, who had dropped Kidd off at her home before purchasing dinner and cigarettes at other locations, called the decedent at 9:48 p.m. but received no response. Upon entering the apartment less than fifteen minutes later, Vance discovered the decedent's body lying in a pool of blood in the back bedroom. After attempting to give CPR, both Vance and her upstairs neighbors called 911. Philadelphia Police Sergeant Conway and Officer Theodore Brown answered a radio call for an unresponsive male. The decedent was pronounced dead at the scene at 10:19 p.m.

Forensic pathologist Dr. Lindsay Simon performed the decedent's autopsy and determined that the cause of death was a single gunshot wound to the head, and the manner of death was homicide. The projectile entered the decedent's head above the right eyebrow, traveled through his skull and brain, before exiting behind the left ear, causing immediate incapacitation and death.

There was no soot or stippling discovered on the body to determine the distance of the shooter.

. . . .

Detective Lucke completed a call detail record report on the cellular device attributed to [Appellant] on June 7, 2017, which revealed a series of phone calls between his device and those attributed to Holder and Thorogood. At 7:53 p.m., Thorogood placed a call to [Appellant], lasting fifteen seconds. At 7:54 and 7:57 p.m., Holder left voicemails with [Appellant], who responded with an outgoing call to Holder at 8:24. [Appellant] and Holder next communicated at 9:21 p.m., before the instant shooting. [Appellant] next placed several calls to Holder between 9:40 p.m. and 9:41 p.m., and again between 10:01 p.m. and 10:09 p.m. that evening. In total, [Appellant]'s device recorded twenty-six communications between devices associated with [Appellant] and Holder, all of which occurring within the time frame immediately before and after the murder.

Detective Lucke's analysis further revealed that, in the aftermath of the instant shooting, [Appellant] deleted from his cell phone all records of his communications with [Holder] and Thorogood that evening. Cell phone data extraction permitted Detective Lucke to recover some, but not all, of their communications.

Detective James Dunlap, an expert in cellular tower analysis, reviewed data from towers located at 8046 Erdrick Street and .6 miles away from the crime scene on Interstate-95, and identified numerous connection between [Appellant]'s device and those towers between 8:04 p.m. and 9:54 p.m. on the night of the murder. Additional connections depicted [Appellant]'s device making two connections at a tower located at Rhawn Street and Roosevelt Boulevard, 1.5 miles away from the crime scene. Nine connections between 10:06 p.m. and 10:10 p.m. show the device travelling along Roosevelt Boulevard before making a connection with the tower at 1831 West Allegheny Avenue, which is associated with [Appellant]'s home address at 1931 West Willard Street.

Analysis of the device associated with Holder (215-880-7871) showed that it connected to the tower associated with the crime scene numerous times between 9:25 p.m. and 10:08 p.m.

- 3 -

Analysis of the device associated with Thorogood revealed that the device was not in the area of the crime scene . . . at the time of the shooting.

Trial Court Opinion, 6/22/20, at 2-4, 6-7 (citations omitted).

Appellant was arrested and charged with burglary, conspiracy to commit murder/robbery, and other crimes not at issue in this appeal. Ultimately Appellant and co-defendant Holden elected to waive their rights to a trial by jury and proceeded to a bench trial at the conclusion of which Appellant was convicted of burglary and conspiracy to commit burglary. Prior to sentencing, Appellant filed a motion for extraordinary relief, which resulted in the grant of a judgment of acquittal on the conspiracy count on the basis that the Commonwealth had only listed murder and robbery as the objectives of the conspiracy alleged in the criminal information. Thereafter, Appellant was sentenced as indicated above.

Appellant filed a timely post-sentence motion, which was promptly denied. Appellant thereafter filed a timely notice of appeal, and both Appellant and the trial court complied with Pa.R.A.P. 1925. Appellant presents the following questions for our consideration:

[1.] Whether the court wrongly convicted [A]ppellant of burglary. . . when he lived in the house, he was found not guilty of conspiracy . . . and there was no evidence Appellant was in the residence at the time the crime was committed.

[2.] Whether the verdict was against the sufficiency of the evidence to convict [A]ppellant of burglary. . . when he had privilege to be in the residence in question, [he] was not present at the time of the crime, and [he] was found not guilty of conspiracy . . . .

[3.] Whether the verdict was against the weight of the evidence to convict [A]ppellant of burglary . . . when he had privilege to be in the residence in question, [he] was not present at the time of the crime, and [he] was found not guilty of conspiracy. . . .

[4.] Whether the court abused its discretion when it sentenced [A]ppellant to [six]-[twelve] years SCI.

Appellant's brief at 5 (unnecessary capitalization omitted).

We begin with a review of the applicable legal principles.

In reviewing the sufficiency of the evidence, we must determine whether the evidence admitted at trial and all reasonable inferences drawn therefrom, viewed in the light most favorable to the Commonwealth as verdict winner, were sufficient to prove every element of the offense beyond a reasonable doubt. [T]he facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. It is within the province of the fact-finder to determine the weight to be accorded to each witness's testimony and to believe all, part, or none of the evidence. The Commonwealth may sustain its burden of proving every element of the crime by means of wholly circumstantial evidence.

*Commonwealth v. Williams*, 176 A.3d 298, 305-06 (Pa.Super. 2017) (citations and quotation marks omitted).

Appellant was convicted of burglary under 18 Pa.C.S. § 3205(a), which provides as follows, in pertinent part:

A person commits the offense of burglary if, with the intent to commit a crime therein, the person:

(1)(i) enters a building or occupied structure, or separately secured or occupied portion thereof, that is adapted for overnight accommodations in which at the time of the offense any person is present and the person commits, attempts or threatens to commit a bodily injury crime therein[.]

18 Pa.C.S. § 3502(a)(1)(i). "To sustain a burglary conviction, the Commonwealth is required to prove beyond a reasonable doubt that the offender entered the premises with the contemporaneous intent of committing a crime therein, at a time when he or she was not licensed or privileged to enter." *Commonwealth v. Jacoby*, 170 A.3d 1065, 1078 (Pa. 2017). A burglary is complete the moment the residence is entered. *See*, *e.g.*, *Commonwealth v. Tavarez*, 174 A.3d 7, 13 (Pa.Super. 2017).

The trial court acknowledges that the Commonwealth did not prove that Appellant entered the apartment with Holden to commit the theft therein. *See* Trial Court Opinion, 6/22/20, at 10. The question before us is whether Appellant nonetheless may be found culpable for the crime. Along these lines, this appeal implicates questions of both conspiracy liability and accomplice liability. Regarding the former, we have explained:

> The essence of a criminal conspiracy is a common understanding, no matter how it came into being, that a particular criminal objective be accomplished. Therefore, a conviction for conspiracy requires proof of the existence of a shared criminal intent. An explicit or formal agreement to commit crimes can seldom, if ever, be proved and it need not be, for proof of a criminal partnership is almost invariably extracted from the circumstances that attend its activities. Thus, a conspiracy may be inferred where it is demonstrated that the relation, conduct, or circumstances of the parties, and the overt acts of the co-conspirators sufficiently prove the formation of a criminal confederation. The conduct of the parties and the circumstances surrounding their conduct may create a web of evidence linking the accused to the alleged conspiracy beyond a reasonable doubt. Even if the conspirator did not act as a principal in committing the underlying crime, [he] is still criminally liable for the actions of his co-conspirators taken in furtherance of the conspiracy.

*Commonwealth v. Gross*, 232 A.3d 819, 839 (Pa.Super. 2020) (*en banc*)

(cleaned up).  On the other hand,

> An accomplice is equally criminally liable for the acts of another if the accomplice acts with the intent of promoting or facilitating the commission of an offense and agrees, aids, or attempts to aid such other person in either planning or committing that offense.  Unlike conspiracy, the term "commission of the offense" in the accomplice context focuses on the conduct of the accomplice, not the result of the offense. . . .  Accomplice liability simply requires the defendant to have the mental state necessary for the commission of the crime, i.e., aiding the principal.

*Id*. at 840 (cleaned up).  *See also* 18 Pa.C.S. § 306.[1]

With these principles in mind, we consider the merits of Appellant's appellate issues.  We begin by noting that Appellant does not contend, in

_____

[1]The complicity liability statute provides, in relevant part:

> **(b) Conduct of another.--**A person is legally accountable for the conduct of another person when:
>
> > . . . .
>
> > (3) he is an accomplice of such other person in the commission of the offense.
>
> **(c) Accomplice defined.--**A person is an accomplice of another person in the commission of an offense if:
>
> > (1) with the intent of promoting or facilitating the commission of the offense, he:
> >
> > > (i) solicits such other person to commit it; or
> > >
> > > (ii) aids or agrees or attempts to aid such other person in planning or committing it[.]

18 Pa.C.S. § 306.

- 7 -

relation to any of his arguments, that the evidence was insufficient to establish: (1) that Holder committed the burglary; (2) that Appellant conspired with Holder to commit the burglary; or (3) that Appellant acted as Holder's accomplice in committing the burglary.

Rather, Appellant's claims, including his sentencing challenge, are wholly based upon the notion that his acquittal on the separate conspiracy charge means that his burglary conviction and sentence cannot stand unless the evidence at trial established that he himself committed each of the elements of that crime. **See** Appellant's brief at 12 (arguing his burglary conviction should be overturned because the not guilty verdict as to conspiracy means he cannot be found guilty of burglarizing a residence he had permission to be in and that he did not enter at or near the time of the crime); **id**. at 14 (arguing the evidence was insufficient to sustain his burglary conviction because the Commonwealth did not prove that he "entered the residence during the critical time frame"); **id**. at 15 (same as to weight of the evidence); **id**. at 17 ("[A]ppellant received a 6-12 sentence for a crime he did not commit. . . . The sentence would be a legal sentence if [Appellant] was guilty of the crime charged, which he was not.").

Thus, the resolution of all of Appellant's questions hinges upon a single issue: whether his acquittal of the conspiracy charge precluded the imposition of any liability upon him for the actions of co-defendant Holder in committing the burglary. For the following reasons, we conclude that it did not.

First, this Court has expressly held that, where there is evidence in the record to establish that a conspiracy existed, the defendant may properly be held liable on a theory of conspiracy liability for a substantive crime committed in furtherance of the conspiracy even where the fact-finder finds the defendant not guilty of the separate conspiracy charge. In **Commonwealth v. King**, 990 A.2d 1172 (Pa.Super. 2010), King was charged with murder, robbery, and conspiracy in connection with the death of a victim shot by King's alleged co-conspirator. The jury found King guilty of murder, but acquitted him of robbery and conspiracy. On appeal, King argued, *inter alia*, that the evidence was insufficient to sustain his murder conviction because it did not establish that he acted as the shooter's accomplice. This Court ruled that it "need not address the question of accomplice liability because the evidence was sufficient to support the conviction under conspiratorial liability." **Id**. at 1177.

This Court reiterated the well-settled principles of conspiracy liability discussed *supra*, and discussed the evidence that demonstrated that King agreed with the shooter to commit the robbery in question, that King knew that the shooter had a gun, and that the shooting was a probable result of the robbery. **Id**. at 1179. Hence, we held King was liable for his co-conspirator's murder. We went on to illuminate that King's acquittal on the separate conspiracy count did not preclude a murder conviction premised on conspiracy liability:

> We are quite aware the jury acquitted [King] of the conspiracy charge. The acquittal on that count and the jury's

reasons for it are of no moment to us. Because the evidence of record was sufficient to establish conspiratorial liability and conspiratorial liability was a legally sufficient theory which could be applied to the murder charge, there is no basis to disturb [King]'s conviction. Simply put, the jury had a sufficient evidentiary basis upon which to conclude [King] was liable for third degree murder as a co-conspirator. We do not know, and cannot care, why the jury acquitted him of conspiracy. Therefore, his sufficiency claim fails.

*Id*. at 1179 (footnote omitted).

In the instant case, we **do** know why Appellant's guilty verdict for conspiracy to commit burglary was reversed: because it was not charged by the Commonwealth in the information. *See* N.T., Sentencing, 2/12/21 at 17-20 ("I can't convict someone for a charge in which they're not charged. The Commonwealth chose what crimes to put on those bills and they did not include burglary, so the motion is granted to that extent."). The acquittal was **not** based upon a dearth of evidence that Appellant reached an agreement with Holder to commit the robbery. In any event, the mere fact that Appellant's conviction for the inchoate conspiracy charge was reversed precludes neither conspiracy nor accomplice liability for the burglary. *See King*, *supra* at 1179; *Commonwealth v. Tolbert*, 670 A.2d 1172, 1185 (Pa.Super. 1995) (holding acquittal of conspiracy charge did not preclude Commonwealth from pursuing a theory of accomplice liability on retrial).

Second, the evidence offered at trial was sufficient to establish Appellant's liability either as a co-conspirator or as an accomplice for Holder's

unauthorized entry into the apartment with the intent to commit a crime therein. As the trial court explained:

> [T]his court's guilty verdict was reached on the strength of overwhelming evidence demonstrating [Appellant]'s culpability as both a conspirator and an accomplice. Data extracted from [Appellant]'s cell phone and nearby cell towers showed that, although he informed [his paramour] Noland that he was returning home as they left the apartment at 8029 Erdrick Street prior to the burglary, [Appellant] remained in the immediate vicinity of the residence. At that time, [Appellant] began communicating with Holder, an individual for whom he had no record of prior phone communications. Nonetheless, as evidence extracted from Holder's ankle monitor shows, after communicating with [Appellant], Holder travelled across the city to [Appellant]'s location. There, video cameras captured [Appellant] escorting Holder and another individual to the apartment.
>
> This court agrees with [Appellant]'s assertion that the Commonwealth failed to present any evidence indicating that he was present in the home at the time of the burglary. However, both fingerprint evidence recovered from [the residence] and GPS monitoring from [Holder's] ankle monitor unequivocally demonstrate that Holder entered the home at approximately 9:35 p.m. The object of the instant conspiracy, burglary, was completed once Holder stepped foot inside the abode.
>
> While the Commonwealth could not prove that [Appellant] was in the home at the time of the burglary, and certain video evidence seems to show that [Appellant] left the area of Erdrick and Welsh Streets four minutes before the instant homicide, his role as the mastermind of the instant burglary cannot be diminished. Due to his relationships with both Noland and the decedent, [Appellant] clearly knew that Vance kept a safe in Nolan's closet and that the decedent, due to his status as low-level narcotics dealer, likely kept narcotics and cash inside his backpack. Importantly, Holder had no connection to anyone in the home save for [Appellant], and only began to travel to the location after [Appellant] directed him to the home and informed him of the valuables contained within.

Once inside the home, Holder ransacked the safe, leaving his fingerprint on a box of ammunition and the remainder of its contents strewed across the bedroom. After shooting the decedent once in the head, Holder escaped from the apartment with the decedent's backpack. GPS monitoring data demonstrated that Holder was only in the home for a brief period of time, and his actions therein demonstrated a familiarity with the apartment that could have only been provided through [Appellant]'s direction and description of the abode. As the fact-finder tasked with analyzing this evidence, this court was correct to conclude that [Appellant] directed Holder to the home for the purpose of burglary, thereby soliciting Holder to remove any items he deemed sufficiently valuable. The evidence presented at trial was therefore sufficient to support the burglary conviction, and the instant claim fails.

Trial Court Opinion, 6/22/20, at 10-11 (unnecessary capitalization omitted).

We agree with the trial court's assessment. The Commonwealth's evidence, and reasonable inferences therefrom, support both the findings that Appellant reached an agreement with Holder that Holder would enter the apartment to commit a crime therein, and that Appellant actively participated in the burglary by guiding Holder to the apartment and informing him where to locate the items of value. Consequently, Appellant was properly convicted pursuant to either conspiracy or accomplice liability. *Accord King*, *supra* at 1179 (affirming murder conviction on conspiracy theory where co-conspirator shot victim in course of committing robbery that defendant had agreed to arrange and share proceeds from); *Commonwealth v. Lambert*, 795 A.2d 1010, 1024 (Pa.Super. 2002) (holding defendant guilty of burglary though accomplice liability where defendant drove co-defendant to the scene, waited outside during the burglary, then drove co-defendant away afterwards).

As Appellant makes no attack on his conviction or sentence apart from his argument that he did not commit the burglary and could not be liable for Holder's doing so, he is entitled to no relief on any of his appellate issues.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 5/25/2021