479 A.2d 509

**COMMONWEALTH of Pennsylvania**

**v.**

**Harry Martin RILEY, Appellant.**

Superior Court of Pennsylvania.

Argued March 17, 1983.

Filed June 8, 1984.

202

204

Charles Nistico, Chester, for appellant.

Vram Nedurian, Jr., Assistant District Attorney, Media, for Commonwealth, appellee.

Before CERCONE, President Judge, and ROWLEY and HOFFMAN, JJ.

CERCONE, President Judge:

Appellant was charged at informations Nos. 426A–426H of 1979 with murder, voluntary manslaughter and other lesser crimes. Of particular interest to this appeal is that, he was charged, at information No. 426G, with conspiracy with one John McCormick, to commit, or attempt to commit, or solicit to commit, murder, voluntary manslaughter, and involuntary manslaughter. While at No. 426H appellant was charged with conspiracy with one Robert Kane to commit, or attempt to commit, or solicit to commit aggravated assault, recklessly endangering another person, possessing an instrument of crime, and prohibited offensive weapon. Appellant proceeded to trial on the informations before a jury and was found guilty of conspiracy to commit voluntary manslaughter, conspiracy to commit aggravated assault, conspiracy to commit recklessly endangering another person and conspiracy to possess an instrument of crime; he was acquitted of all other charges. Post-trial motions were filed, argued and denied. On the charge of conspiracy to commit voluntary manslaughter appellant was sentenced to a period of five (5) to ten (10) years incarceration. A term of five (5) to ten (10) years imprisonment was also imposed on the count of conspiracy to commit aggravated assault. The court further imposed a period of one (1) to two (2) years for the conviction of conspiracy to recklessly endanger another. The sentence on the weapons offense was suspended. All sentences were to run consecutive with

each other. Therefore, appellant was sentenced to a total term of eleven (11) to twenty-two (22) years. Appellant appeals the judgment of sentence.

To properly understand the various issues raised by appellant we must first place the charges into the factual context in which they arose. In doing so, we accept as true the evidence as produced by the Commonwealth, the verdict winner.

On September 21, 1973, James Long was shot four times. He died of his wounds. James H. Colgan testified that two weeks prior to the shooting he was with appellant at a bar. They left the bar and drove in Colgan's car to the MacDade Mall. Appellant placed a rifle on the back floor of the vehicle. They parked the vehicle near the mall and proceeded to a group of hedges across the street from the mall. From there they were able to observe a group of members of a motorcycle club, known as the Warlocks, standing under a theatre marquee. Appellant took the rifle, which was equipped with a scope from the car, and observed the gang members through the scope. When Colgan asked what appellant was doing, appellant responded "I want to get a Warlock." After appellant indicated that the range was too great, the two men got in Colgan's car and drove to a different vantage point. There appellant from inside the car, once again looked through the gun sight of the rifle, aiming the gun at the club members. Colgan panicked and placed the car in gear preventing appellant from completing the act. Appellant complained to the effect that he (Colgan) was a coward. The two men returned to the bar.

On September 21, 1973, appellant was in the company of Robert Kane and John McCormick. The trio went driving around in Kane's automobile, with appellant being equipped with a .22 caliber semi-automatic rifle and scope. They passed the MacDade Mall where appellant saw one of the Warlocks, James Long. Appellant directed Kane to a dirt road where he then directed Kane to position the car. Appellant rolled down the window, stuck out the rifle, aimed at Long and fired four rounds. He then inquired of

his two companions whether they saw the victim fly back. The three departed the area of the shooting and appellant proceeded to dismantle the weapon. The rifle was wiped off with oil and, then, the barrel was thrown into a pond and the stock was dropped from an overpass. The three went to a bar, frequented by members of another motorcycle club, other than the Warlocks, where appellant told various people there present of the deed that had just been performed.

Criminal proceedings were instituted by a complaint filed on February 16, 1979, followed by the informations filed on April 18, 1979.

We will address appellant's contentions in the same order in which he raises them on appeal. Appellant argues that the evidence was insufficient to demonstrate the existence of a conspiracy. To support such a claim, appellant refers us to several aspects of the case, which he believes demonstrates the weakness of the prosecution's case. He contends that the testimony of his alibi witness, Patrick Hodge, was unimpeached except for an improper reference to prior criminal conduct. Furthermore, Kane's testimony was discredited by the fact, of which the jury was advised, that he was testifying pursuant to a plea bargain.[1] Appellant contends that it is obvious that the jurors did not believe Kane, as the jury acquitted appellant of all the substantive charges of homicide and other related offenses. He theorizes that the jury would not have found him guilty of the conspiracies but for the improper admission of prejudicial testimony.

When weighing the sufficiency of evidence we must view the evidence in a light most favorable to the Commonwealth and drawing all reasonable inferences therefrom, determine whether the trier of fact could find every element of the crime present beyond a reasonable doubt. *Commonwealth v. Byers*, 320 Pa.Superior Ct. 223, 467 A.2d 9 (1983). Credibility of a witness is a factual issue

---

1. Kane was sentenced to a term of 6 to 23 months incarceration.

to be resolved by the trier of fact. *Commonwealth v. Hartzell*, 320 Pa.Superior Ct. 249, 467 A.2d 22 (1983). Furthermore, although a defendant introduces an alibi defense, the jury is free to disbelieve such testimony. *Commonwealth v. Jellots*, 277 Pa.Superior Ct. 358, 419 A.2d 1184 (1980).

 Here the jury apparently believed the testimony of an admitted co-actor, Kane, over that of the alibi witness. We may not interfere with such credibility determination. As to the contention that the jury could not have found appellant to be a participant in the conspiracy since it acquitted him of the homicide and manslaughter charges, this claim is actually a contention that the verdicts were inconsistent. It has long been the rule in Pennsylvania that so long as there is evidence to support the guilty verdict actually returned, inconsistency of verdicts will not be a basis for relief. *Commonwealth v. Glasco*, 298 Pa.Superior Ct. 189, 444 A.2d 724 (1982). *See Commonwealth v. Wanamaker*, 298 Pa.Superior Ct. 283, 444 A.2d 1176 (1982), where this court upheld a conviction for conspiracy to attempt to commit murder even though the defendant was acquitted of the charge of attempt to commit murder. In addition to the testimony set forth above, several witnesses also testified regarding admissions appellant made to them. We see no need to review the evidence further, as it is clear that it was sufficient to support the jury's findings.

This brings us to appellant's complaint that the admission of certain evidence interfered with the jury's fact finding role. He contends that Colgan's testimony pertaining to, what is referred to by the Commonwealth as a "dress rehearsal", of the incident, that occurred two weeks prior to the killing, was irrelevant.

 This court in *Commonwealth v. Kaster*, 300 Pa.Superior Ct. 174, 446 A.2d 286 (1982) and *Commonwealth v. Hawkins*, 295 Pa.Superior Ct. 429, 441 A.2d 1308 (1982) addressed similar claims. In *Kaster* the prosecution was permitted to introduce evidence demonstrating the defend-

ant's ill will towards a certain group of individuals, which was corroborative of evidence of a plan to kill members of such select group. Here Colgan's testimony demonstrated appellant's crusade to shoot a Warlock which had allegedly culminated in such a killing. Such evidence was therefore relevant. Evidence presented in *Hawkins*, was offered for the purpose of showing the defendant's involvement, with others not charged in the information at issue, in a somewhat similar criminal scheme. It was held there that such evidence was properly admitted and that its probative value outweighed the prejudice to the defendant. Colgan's testimony here in question clearly demonstrates a common design or plan to shoot a member of the Warlocks club and its probative value clearly outweighed the prejudice claimed by appellant.

Appellant next complains about two responses elicited from Commonwealth witnesses which he contends refer to prior criminal conduct. In the first instance a Mr. Ettien testified that he had been incarcerated at the same time as appellant. The witness testified that at that time appellant had made statements to him concerning the upcoming trial for the killing of James Long. On cross-examination, defense counsel asked where the conversation occurred, to which the witness responded, in the county jail. Counsel further inquired as to whether appellant was being held there because of the Long shooting. Ettien replied that appellant "had come down" from a state correctional institution. Counsel moved for a mistrial, arguing that such reference indicated that appellant had a prior criminal conviction.

■ We must agree with the trial court that appellant assumed the risk of such response when defense counsel inquired into the reason for appellant's incarceration. *See Commonwealth v. McDuffie*, 476 Pa. 321, 382 A.2d 1191 (1978); *Commonwealth v. Gilliard*, 300 Pa.Superior Ct. 469, 446 A.2d 951 (1982).

■ Furthermore, appellant finds error in testimony elicited from an Officer Parker, who was called to rebut the testimony of Patrick W. Hodge, who testified on appellant's behalf. In the course of his testimony, the officer indicated that at the time he had arrested Hodge, Hodge had used the name of Joseph L. Garrett. Appellant now claims that such reference to the witness' arrest improperly weakened Hodge's credibility. At the time of the testimony no objection was voiced, nor was such a claim raised in post-trial motions, therefore it has not been preserved for appellate review. *Commonwealth v. Horsey,* 481 Pa. 470, 393 A.2d 1 (1978); *Commonwealth v. Bethel,* 295 Pa.Superior Ct. 312, 441 A.2d 1248 (1982).

■ Appellant further contends that he could only be convicted of one conspiracy and therefore the multiple sentences for the multiple conspiracies were improper. We are constrained to agree. The Commonwealth argues that no objection was made to the verdict, nor was a request made to have the verdict molded. The issue was also not raised in post-trial motions or in a motion for reconsideration of the sentence and was not present in the statement of issues complained of. However, a claim that a sentence is unauthorized or illegal can not be waived. *Commonwealth v. Ford,* 315 Pa.Superior Ct. 281, 461 A.2d 1281 (1983); *Commonwealth v. Kerr,* 298 Pa.Superior Ct. 257, 444 A.2d 758 (1982). Therefore we must resolve the dispute at hand.

At sentencing, defense counsel argued strenuously that in light of 18 Pa.C.S.A. § 903(c) his client could only be sentenced on one conspiracy. That section reads:

(c) Conspiracy with multiple criminal objectives.—If a person conspires to commit a number of crimes, he is guilty of only one conspiracy so long as such multiple crimes are the object of the same agreement or continuous conspiratorial relationship.

The Commonwealth contended, and the trial court agreed, that more than one conspiracy existed. Kane testified that he thought appellant was only going to "take off the man's legs." This, the prosecution contends, rose only to an

agreement to commit, at the most, aggravated assault. Accordingly, in information No. 426H appellant was alleged to have conspired with Kane to commit aggravated assault and other lesser offenses. Whereas, with McCormick, appellant was alleged to have shared an intent to kill a Warlock in retribution for the Warlocks being responsible for McCormick's loss of an eye. Hence, information No. 426G charges appellant with conspiring with McCormick to murder Long, as well as other lesser crimes. We find this rationalization to be transparent and we will not continue it.[2]

The facts of this case indicate that on the night of September 21, 1973 appellant, McCormick, and Kane, spotted the victim who they identified as a Warlock, near the MacDade Mall where the Warlocks were known to congregate. Both McCormick and Kane, clearly were aware that the appellant intended to shoot the Warlock member; Kane was driving the trio at appellant's direction. Accepting, the Commonwealth's version, as we must, Kane believed that appellant was *merely* going to cripple the unknowing victim. We are at a loss as to how such differences in perception may amount to more than one conspiracy, especially in respect to appellant who intended only one shooting at the time in question. Only a few cases have addressed situations involving claims of multiple conspiracies, and none are on point with the facts of this case. Nonetheless, a review of such available cases lend support to our holding here.

In *Commonwealth v. Marino*, 213 Pa.Superior Ct. 88, 245 A.2d 868 (1968), the defendants were charged, in three separate indictments with three separate conspiracies. All three dealt with a scheme to blackmail and extort monies from the same individual. Two of the dates corresponded with overt acts committed in furtherance of the plan. It

2. Kane's participation should not be confused with the account given by Colgan. Colgan had accompanied appellant two weeks before the actual shooting. At that time, due to Colgan's second thoughts, any attempted shooting was aborted. Any charges which may have or could have arose from this incident are not part of this appeal.

was held that "but one conspiracy" existed. A similar result was reached in *Commonwealth v. Richbourg,* 260 Pa.Superior Ct. 438, 394 A.2d 1007 (1978). There the co-actors agreed to commit a robbery in order to obtain keys necessary to break into a safe. As the burglary involving the safe was the ultimate goal of the conspiracy, convictions for both conspiracy to burglarize and conspiracy to rob were improper. A final case we wish to discuss is *Commonwealth v. Ivy,* 302 Pa.Superior Ct. 114, 448 A.2d 553 (1982) where the defendant was convicted of five counts of robbery and five counts of conspiracy. All charges arose from a multiple robbery of passengers on a bus. This court found that all robberies were the object of one conspiracy or one conspiratorial relationship.

In this case it is crystal clear that all three actors shared the same intent or goal, and that was to shoot a Warlock. Any differences in what individually the actors contemplated, would result from the shooting, are negated when we review the general principles of conspiracy theory. When a conspiracy is shown to exist, then each conspirator is responsible for the acts of his or her partners committed in furtherance of the conspiracy. *Commonwealth v. Plusquellic,* 303 Pa.Superior Ct. 1, 449 A.2d 47 (1982); *Commonwealth v. Porter,* 300 Pa.Superior Ct. 260, 446 A.2d 605 (1982). Despite the fact that an individual co-conspirator did not contemplate a killing, where such is a natural and probable consequence of a co-conspirator's conduct, the killing is not beyond the scope of the conspiracy. *Commonwealth v. Laurin,* 269 Pa.Superior Ct. 368, 409 A.2d 1367 (1979). Therefore, even though Kane may not have been charged with, nor contemplated, the killing, he still was culpable for it under conspiracy theory.

Having found that only one conspiracy existed we are obligated to vacate the judgment of sentence imposed at No. 426H. Voluntary Manslaughter is a felony of the second degree, 18 Pa.C.S.A. § 2503(c), and a conspiracy to commit such crime is also a felony of the second degree, *Id.* § 905(a). The maximum sentence that may be imposed for

a second degree felony is ten (10) years. *Id.* § 1103(2). Here the trial court imposed the maximum sentence, and therefore no purpose would be served in remanding for resentencing.

Appellant's last argument is that his convictions for conspiracy were barred by the statute of limitations.[3] This issue is being raised for the first time on this appeal. Normally, as the claim was not raised pre-trial, we would deem it to have been waived. *Commonwealth v. Darush,* 501 Pa. 15, 20 n. 4, 459 A.2d 727, 730 n. 4 (1983). However, appellant contends that trial counsel was ineffective in failing to raise such claim and therefore insists that it has not been waived.

Our Supreme Court recently held in *Commonwealth v. Askin,* 502 Pa. 575, 467 A.2d 821 (1983) that the statute of limitations applicable to a charge of conspiracy is two years. 42 Pa.C.S.A. § 5552.[4] Such decision overruled this court's decision in *Commonwealth v. Askin,* 306 Pa.Superior Ct. 529, 452 A.2d 851 (1982) where we held that the statute of limitations for conspiracy is determined by the statute of limitations for the most serious offense for which the defendant could properly have been convicted. We must first determine what the state of the law was in 1979 when appellant was tried, for counsel will not be deemed ineffective for failing to predict future developments in the law. *Commonwealth v. Pritchett,* 320 Pa.Superior Ct. 359, 467 A.2d 364 (1983).

In *Commonwealth v. Kirk,* 340 Pa. 346, 17 A.2d 195 (1941) our Supreme Court held that a completed conspiracy must be prosecuted within two years after its cessation.

---

3. Appellant has prepared a *pro se* memorandum on this point which appellate counsel has incorporated into his brief.

4. As that court noted, § 5552 was amended by the Act of May 13, 1982, P.L. 417 to provide that a conspiracy to commit specifically enumerated offenses be brought within five years. *See* 42 Pa.C.S.A. § 5552(b)(3).

Also pertinent is *Commonwealth v. Fabrizio*, 197 Pa.Superior Ct. 45, 176 A.2d 142 (1961) where the underlying crime was manslaughter. There this court found a prosecution for a conspiracy, where no allegation was made that any act was done in pursuance of the conspiracy or renewal of the conspiracy within two years of the indictment, was barred by the statute of limitations. In a related matter, a panel of this court held in *Commonwealth v. Volk*, 298 Pa.Superior Ct. 294, 444 A.2d 1182 (1982), that where the crime of conspiracy was a continuing offense and was renewed by repetition, a prosecution could be brought at any time within two years of the last offense. Therefore, it is evident that until this court's decision in *Askin, supra*, the law was that a defendant could not be prosecuted for a completed conspiracy which had been concluded more than two years prior to the initiation of the charges.[5] Hence, the allegations against appellant of a conspiracy completed more than five years earlier were untimely.

We were faced with a similar situation in *Commonwealth v. Richey*, 249 Pa.Superior Ct. 365, 378 A.2d 338 (1977). There, as here, a claim that various offenses, including conspiracy, were brought beyond the statute of limitations, was raised for the first time on appeal in the form of a claim of ineffectiveness of counsel. There we stated:

> To determine whether appellants were denied effective assistance of counsel, we must inquire as to the existence of some reasonable basis for counsel's failure to raise the defense of statute of limitations. *Commonwealth ex rel. Washington v. Maroney*, 427 Pa. 599, 235 A.2d 349 (1967). Of course, if the defense had no merit, our inquiry would then cease. *Commonwealth v. Hubbard*, 472 Pa. 259, 372 A.2d 687 (1977). In the instant case,

5. In reaching our decision in *Askin* we relied on *Commonwealth v. Hawkins*, 294 Pa.Superior Ct. 57, 439 A.2d 748 (1982); and *Commonwealth v. Eackles*, 286 Pa.Superior Ct. 146, 428 A.2d 614 (1981). Neither case specifically addressed the statute of limitations pertaining to conspiracy but instead dealt with crimes involving fraud or a breach of a fiduciary duty.

however, it is apparent that portions of the indictments would have been quashed had the statute of limitations been raised, so we must proceed to determine whether there was a reasonable basis for failing to do so. We are unable to determine from the record whether or not such a reasonable basis existed.

\* \* \* \* \* \*

However, since we will not manufacture a reasonable basis not supported by the record, we must remand for an evidentiary hearing to determine why counsel did not raise the statute of limitations defense. *Commonwealth v. Twiggs,* 460 Pa. 105, 331 A.2d 440 (1975). If it is determined that trial counsel had a reasonable basis for their actions, the judgments of sentence shall be reinstated.

*Id.,* 249 Pa.Superior Ct. at 373–74, 378 A.2d at 342.

■ We are constrained to grant the same relief here especially in view of the fact that trial counsel is also representing appellant in this appeal. Therefore, we also vacate the judgment of sentence imposed at No. 426G and we remand for a evidentiary hearing to determine whether counsel had a reasonable basis for not raising the statute of limitations defense. As trial counsel must explain his reason for foregoing a valid claim, new counsel should be appointed to represent appellant. Should the court determine that counsel was not ineffective it should reinstate the judgment of sentence at No. 426G.[6]

Judgment of sentence at No. 426H is vacated. Judgment of sentence at No. 426G is vacated and remanded for proceedings consistent with this opinion. We do not retain jurisdiction.

6. We realize that should it be determined that counsel was ineffective appellant would be entitled to be discharged on all of the conspiracy convictions, however we have chosen to address the other issues in the interest of judicial economy so that a new appeal need not be taken as to those issues should the court find against appellant.