J-A19006-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| EUGENE JAMES MCCARTHY, JR., | |
| Appellant | No. 11 WDA 2014 |

Appeal from the Judgment of Sentence November 18, 2013
In the Court of Common Pleas of Allegheny County
Criminal Division at No(s): CP-02-CR-0011401-2012

BEFORE:  BENDER, P.J.E., JENKINS, J., and MUSMANNO, J.

DISSENTING MEMORANDUM BY BENDER, P.J.E.: **FILED JANUARY 15, 2016**

I agree with the Majority that there was sufficient evidence to disprove that Appellant's co-defendant, Quintelle Rankin, shot the victim in self-defense.  However, I disagree that there was sufficient evidence to hold Appellant vicariously liable for third-degree murder and, relatedly, I disagree that there was sufficient evidence to convict him of the most serious form(s) of robbery.  Accordingly, I respectfully dissent.

It is undisputed that Appellant did not shoot and kill Johns. Commonwealth's Brief, at 13 ("In the instant case, [A]ppellant was not the actual gunman.").  Furthermore, the Commonwealth did not charge Appellant with conspiring to commit a homicide offense.  Thus, Appellant's culpability for third-degree murder in this case can only derive from either his role as an accomplice to the killing itself (accomplice-to-murder), or

through his role as co-conspirator to the crime of robbery (conspiratorial liability). To establish either theory of guilt, I believe it was critical for the Commonwealth to demonstrate that Appellant knew Rankin possessed a gun at the time he acted in concert with Rankin to rob Johns of his marijuana. Proof of Appellant's knowledge in this regard was essential to establish that Appellant acted with malice for purposes of proving accomplice-to-murder; or, for the purposes of conspiratorial liability, that the killing was the natural and probable consequence of the robbery to which Appellant conspired.

Critical to my analysis of these theories, therefore, is whether the Commonwealth proved that Appellant knew that Rankin was armed when their fatal interaction with Johns began or, at least, whether such knowledge could be reasonably inferred from the established facts. If that inference was reasonable, then Appellant's sufficiency claim regarding his conviction for third-degree murder is meritless.[1] First, however, I briefly address the trial court's faulty analysis of this issue.

*The trial court's theory of culpability is defunct*

---

[1] This is true despite Appellant's contention that conspiratorial liability did not survive the adoption of our Crimes Code. Appellant's argument regarding the Commonwealth's failure to prove malice for purposes of accomplice liability for third-degree murder hinges upon his contention that he was unaware that Rankin was armed. If Appellant is guilty of third-degree murder as Rankin's accomplice, his liability for that offense as a co-conspirator to robbery is superfluous.

The trial court sidesteps answering whether there was adequate proof that Appellant knew that Rankin was armed, even though the Commonwealth implicitly acknowledges the importance of that inference in establishing Appellant's guilt (as the Commonwealth does not present any arguments supporting Appellant's culpability for third-degree murder that do not rely on that inference). This is apparently due to the trial court's adoption of a common misunderstanding of the scope of accomplice liability under the Pennsylvania Crimes Code.

The trial court's Rule 1925(a) opinion implies that, because Appellant was Rankin's accomplice *in a robbery* (a position somewhat conceded by Appellant[2]), that Appellant can be held liable for third-degree murder on that basis alone, presumably under the theory that the murder was a natural and probable consequence of the robbery. ***See*** Trial Court Opinion (TCO), 7/18/14, at 10 (concluding, after summarizing the evidence demonstrating Appellant's complicity in the robbery, that the court "believes this evidence was sufficient to prove that [Appellant] acted in concert with Mr. Rankin to aid and assist *in the robbery* which resulted in the shooting of … Johns") (emphasis added). However, as our Supreme Court has recently made clear:

_____

[2] As discussed in greater detail, *infra*, Appellant does not dispute his involvement in a robbery. However, Appellant does contend that he did not act as an accomplice to an *armed* robbery, and thus disputes the specific provisions of the robbery for which he was convicted.

Per the express terms of the Crimes Code, … accomplice liability has been made offense-specific. Accordingly, the general rule is that a person is an accomplice of another in the commission of "an offense" if, acting with the intent to promote or facilitate the commission of "the offense," he solicits the other person to commit it or aids, agrees, or attempts to aid the other person in planning or committing it. 18 Pa.C.S. § 306(c). The broader approaches—including the common-design theory and the related precept that an accomplice was liable for all of natural and probable consequences of the principal's actions in the commission of a target offense—were supplanted by the General Assembly with the adoption of the Crimes Code and its incorporation of core restraints on criminal liability taken from the Model Penal Code. ***See generally Commonwealth v. Roebuck***, 612 Pa. 642, 651–56, 32 A.3d 613, 618–22 (2011) (discussing the interrelationship between the culpability provisions of the Crimes Code and the Model Penal Code in terms of the treatment of accomplice liability).

In particular, the salient terms of Section 306 of the Crimes Code ("Liability for conduct of another; complicity") are derived from Section 2.06 of the Model Penal Code, which expressly rejected the expansive common-design and natural-and-probable-consequences doctrines, refocusing liability for complicity squarely upon intent and conduct, not merely results. ***See*** American Law Institute, Model Penal Code and Commentaries § 2.06 cmt. 6(b), at 312 (1985) ("[T]he liability of an accomplice ought not to be extended beyond the purposes that he shares. Probabilities have an important evidential bearing on these issues; to make them independently sufficient is to predicate the liability on negligence when, for good reason, more is normally required before liability is found."). After the passage of the Crimes Code, status as an accomplice relative to some crimes within a larger criminal undertaking or episode no longer *per se* renders a defendant liable as an accomplice for all other crimes committed. ***See Commonwealth v. Flanagan***, 578 Pa. 587, 607–08 & n. 11, 854 A.2d 489, 501 & n. 11 (2004). Rather, closer, offense-specific analysis of intent and conduct is required.

***Commonwealth v. Knox***, 105 A.3d 1194, 1196-97 (Pa. 2014).

Thus, the trial court appears to apply the now-defunct "natural and probable consequence" theory of pre-Crimes Code, common law accomplice liability to hold Appellant accountable for third-degree murder based on Appellant's role as an accomplice to robbery. However, because accomplice liability is offense-specific, Appellant's conviction for third-degree murder can only be sustained via accomplice liability if Appellant was an accomplice *to the crime of third-degree murder itself*.

*Appellant's knowledge of Rankin's firearm*

The Commonwealth concedes that no direct testimony supports the factual conclusion that Appellant knew that Rankin was armed. Commonwealth's Brief, at 15. Instead, the Commonwealth argues that "through the compelling circumstantial evidence in this case, the only reasonable inference is that [A]ppellant was fully aware of the firearm within Rankin's possession." *Id.* Thus, I would undertake a review of the evidence to determine whether it was sufficient to support a reasonable inference that Appellant knew that Rankin was armed when they conspired to rob Johns.

To support its assertion, the Commonwealth recounts the facts leading up to the robbery of Johns, with special emphasis on Appellant's comment to Rankin and Estes regarding potential robbery targets ("licks") as they surveyed the area where the robbery occurred. The Commonwealth also relies on the fact that Rankin "simultaneously pulled out a gun" when Appellant declared that Johns "might as well give me all of it." Commonwealth's Brief, at 16.

I disagree that such evidence was sufficient to demonstrate Appellant's knowledge that Rankin was armed. The Commonwealth provided no evidence, testimonial or otherwise, directly demonstrating, or tending to demonstrate, Appellant's knowledge of Rankin's possession of a firearm. Even assuming that the Commonwealth adequately proved that Appellant and Rankin had formed an implicit agreement to rob Johns, it does not necessarily follow, in combination with Rankin's use of the firearm during the robbery, that Appellant knew that Rankin was armed. Such knowledge is certainly not, as the Commonwealth claims, 'the only reasonable inference' to flow from such a fact. The Commonwealth also embellishes the record by suggesting that Johns drew his weapon simultaneous to Appellant's demand. The trial court's summary of the facts indicates that Rankin pulled his gun several seconds after Appellant demanded the rest of Johns' marijuana. TCO, at 2.

It is not unreasonable to believe, based on the facts and circumstances proven at trial, that 1) Appellant intended to simply grab Johns' marijuana and run; or 2) Appellant intended to use his 3-to-1 numerical advantage to physically intimidate Johns, but without any intent to employ the use of force; or 3) Appellant intended or anticipated the use of some physical force to get Johns to comply, but did not anticipate Rankin's use of a firearm. It is patently unreasonable to suggest Appellant's knowledge of Rankin's firearm flows directly from the fact that they shared the intent to rob, and nothing more. Moreover, to suggest that Rankin's use of a firearm demonstrated

Appellant's knowledge of it at an earlier time is simply bootstrapping. Clearly, Appellant knew Rankin had a firearm *when Rankin began shooting Johns*. Far more important, however, is what Appellant knew beforehand.

Simply put, although there was clearly sufficient evidence to demonstrate Appellant's complicity in a robbery, the same evidence speaks very little to the question of whether Appellant knew that Rankin was armed. It is pure speculation on the Commonwealth's part to suggest otherwise, and such speculation is not congruent with our sufficiency standard.[3] As this Court explained in **Commonwealth v. Paschall**, 482 A.2d 589 (Pa. Super. 1984):

> In assessing [the] appellant's sufficiency of the evidence claim, we are mindful that the Commonwealth may sustain its burden of proof by means of wholly circumstantial evidence, which, of

_____

[3] The Commonwealth also suggests that the "precise coordination of [A]ppellant's and Rankin's efforts to steal the marijuana leads to the reasonable inference … that [A]ppellant knew that Rankin was armed[.]" Commonwealth's Brief, at 19. The Commonwealth fails to justify its use of the term "precise" in this context, and appears to simply be rehashing the same argument—that Appellant and Rankin's common scheme to rob Johns necessarily involved Appellant's knowledge that Rankin was armed. This is still an argument rooted in speculation, suggesting Appellant had specific knowledge of the presence of a concealed firearm on Rankin merely because the two had implicitly agreed to engage in a criminal enterprise. However, the fact that Rankin drew his weapon soon after Appellant initiated the robbery is not particularly suggestive of Appellant's prior knowledge of Rankin's gun. Hypothetically speaking, Appellant could have known that Rankin had a gun regardless of Rankin's choice to draw and use it during the robbery. The fact that Rankin drew the gun during the robbery does suggest, quite strongly, that Rankin anticipated using a gun during that robbery, but implies nothing regarding Appellant's knowledge.

necessity, draws into play the affixing of a line of demarcation between the requisite degree of persuasion ("beyond a reasonable doubt") and impermissible speculation. *See* ***Commonwealth v. Cimaszewski***, 447 Pa. 141, 288 A.2d 805 (1972). The former is required while the latter is not tolerated as the basis for a conviction. ***Commonwealth v. Meredith***, 490 Pa. 303, 416 A.2d 481 (1980). Thus, in the Commonwealth's efforts to establish guilt predicated upon circumstantial evidence, it must be kept in mind that, "[t]he inferred fact must flow, beyond a reasonable doubt, from the proven fact where the inferred fact is relied upon to establish the guilt of the accused or the existence of one of [the] elements of the offense." ***Commonwealth v. Meredith***, *supra*, 490 Pa. at 310, 416 A.2d at 485.

*Id.* at 591-92.

Despite an extensive direct examination of Cory Estes,[4] and an equally extensive cross-examination of Rankin, the Commonwealth never once even attempted to solicit testimony or evidence tending to demonstrate that Appellant knew that Rankin was armed.[5] Thus, I agree with Appellant that

_____

[4] Cory Estes was the Commonwealth's primary witness against Appellant and Rankin. Estes had conspired with Appellant and Rankin to rob the victim.

[5] Obviously, neither Estes nor Rankin could have testified directly as to the content of Appellant's mind. However, one can imagine any number of hypothetical scenarios which could form the basis for the jury to have rationally inferred Appellant's knowledge that a firearm might be used in the robbery. For instance, if Rankin displayed his firearm to his cohorts prior to the robbery, an inference of Appellant's knowledge of Rankin's possession of that weapon would clearly be beyond dispute, let alone reasonable. Similarly, if Appellant had threatened to shoot Johns, it would be reasonable to conclude that an armed robbery was intended, even if such a threat did not specifically address which robber was armed. However, no facts or circumstances found in the record of this case tend to support the notion that Appellant knew that Rankin was armed, other than the fact that Rankin used the weapon during the robbery.

the Commonwealth failed to prove that he knew that Rankin was armed when he grabbed Johns' marijuana. With this factual issue resolved, I would move on to consider Appellant's culpability as an accomplice to the murder itself or by means of conspiratorial liability.

*Accomplice to third-degree murder*

To demonstrate Appellant's guilt as an accomplice to third-degree murder, the Commonwealth was required to show at trial that, "with the intent of promoting or facilitating the commission of" third-degree murder, Appellant "solicit[ed] such other person to commit it;" or "aid[ed] or agree[d] or attempt[ed] to aid such other person in planning or committing it[.]" 18 Pa.C.S. § 306(c). Fundamental to this task is demonstrating that Appellant shared with the principal, Rankin, the requisite *mens rea* for the offense of third-degree murder—malice. **See Commonwealth v. Roebuck**, 612 Pa. 642, 660, 32 A.3d 613, 624 (Pa. 2011) ("[A] conviction for murder of the third degree is supportable under complicity theory where the Commonwealth proves the accomplice acted with the culpable mental state required of a principal actor, namely, malice."). Malice is defined as follows:

> Malice exists where there is a "wickedness of disposition, hardness of heart, cruelty, recklessness of consequences, and a mind regardless of social duty, although a particular person may not be intended to be injured." **Commonwealth v. Pigg**, 391 Pa.Super. 418, 571 A.2d 438, 441 (1990), *appeal denied*, 525 Pa. 644, 581 A.2d 571 (1990) (quoting **Commonwealth v. Drum**, 58 Pa. 9, 15 (1868)). Where malice is based on a reckless disregard of consequences, it is not sufficient to show mere recklessness; rather, it must be shown the defendant consciously disregarded an unjustified and extremely high risk

that his actions might cause death or serious bodily injury. **See Commonwealth v. Scales**, 437 Pa.Super. 14, 648 A.2d 1205, 1207 (1994), *appeal denied*, 540 Pa. 640, 659 A.2d 559 (1995) (regarding third degree murder). A defendant must display a conscious disregard for almost certain death or injury such that it is tantamount to an actual desire to injure or kill; at the very least, the conduct must be such that one could reasonably anticipate death or serious bodily injury would likely and logically result.

**Commonwealth v. Kling**, 731 A.2d 145, 147-48 (Pa. Super. 1999).

No evidence in this case tended to show that Appellant specifically planned to injure or kill Johns, nor does the Commonwealth contend otherwise. Thus, I would focus on the question of whether Appellant exhibited conduct which displayed a "conscious disregard for almost certain death[,]" or from which one could "reasonably anticipate death or serious bodily injury would likely and logically result." **Id.** Appellant argues that the Commonwealth's failure to prove that he knew that Rankin was armed precluded the jury from finding that he acted with malice sufficient to support his conviction for third-degree murder as an accomplice, given the lack of other facts or circumstances demonstrating it:

> Since Appellant thought that he and his companions w[ere] going to commit a weaponless barehanded assault (at most) upon the Decedent in order to take his marijuana, and since there was no discussion of, e.g., beating Johns to death (even only if need be), there was simply nothing in this case suggesting to Appellant that death or extraordinary injury was a remotely possible outcome, let alone an outcome that was virtually certain to occur.

Appellant's Brief, at 39. The Commonwealth does not offer a counter-analysis other than to suggest that Appellant did, in fact, know that Rankin

was armed when the robbery began. As discussed above, I have concluded that the Commonwealth did not provide adequate evidence to allow that inference.

To address whether Appellant was proven to have acted with malice, I would direct our legal analysis to several cases discussed by the parties in their briefs, beginning with **Commonwealth v. Baskerville**, 681 A.2d 195 (Pa. Super. 1996). Therein, the appellant had argued that the evidence was "insufficient to prove malice in order to sustain his conviction for third-degree murder." *Id.* at 199. The Superior Court sustained Baskerville's conviction for third-degree murder, and, as necessary, the jury's finding of malice, based on the following facts:

> On or about the night of March 30, 1994, Baskerville and his friend, Baron Simmons, were walking through their West Philadelphia neighborhood when they came upon the co-defendant, John Haynes, and another man, Mark Malloy. Malloy asked Baskerville if he had $100.00 that he owed him. Baskerville, realizing that Haynes had a gun, replied that he did not and began to walk away. Haynes called to Baskerville and asked him if he knew who was sitting in a car that was parked nearby. When Baskerville responded that he did not know, Haynes suggested that they investigate the occupants of the car together. Upon investigation of the auto, Baskerville discovered that he knew both the driver's side occupant, Darren Williams, and the passenger's side occupant, David Anderson. After a brief conversation with the occupants, both Baskerville and Haynes walked away from the car.
>
> Upon reaching the street corner, Haynes asked Baskerville whether Williams or Anderson was wearing any jewelry. After Baskerville replied that both men were wearing jewelry, Haynes asked Baskerville to return to the auto and ask the occupants for a cigarette. Baskerville agreed, walked to the car and asked Anderson for a cigarette. Meanwhile, Haynes approached the

driver's side window and demanded Williams' jewelry at gunpoint. As Williams was handing his watch to Haynes, he tried to push the gun aside and drive away. Once Williams stepped on the accelerator, Haynes shot him four times in the back. The car, driven by Williams, crashed into a nearby, parked car. Williams later died from massive blood loss. The day after the robbery, Baskerville saw Haynes in the neighborhood, where he promised Baskerville $50.00 for keeping quiet about the crime and also forgave Baskerville's $100.00 debt owed to Malloy.

*Id.* at 197-98 (footnote omitted).

In rejecting Baskerville's claim that he did not act with malice, it was critical to the *Baskerville* Court's analysis that he "entered into a criminal conspiracy to commit *armed* robbery" and that "[a]t the time of the agreement, Baskerville had knowledge that his co-conspirator, Haynes, possessed a gun." *Id.* at 200 (emphasis added). The *Baskerville* Court concluded that Baskerville's "actual participation in the crime" of robbery, *in addition to his knowledge that his cohort was armed*, combined to demonstrate "an extremely high risk that his actions might cause death or serious bodily harm," thereby justifying a finding that he acted with malice. *Id.*

Similarly, in *Commonwealth v. King*, 990 A.2d 1172 (Pa. Super. 2010), the appellant argued that he lacked the requisite malice to be convicted of third-degree murder, where the appellant was not the shooter but knew the shooter was armed before the robbery commenced. The *King* Court rejected his claim, noting that "[e]ven if [the a]ppellant did not necessarily anticipate that [the shooter] would kill the Victim, the killing was

a natural and probable consequence of the *armed* robbery in which [the two] conspired." *Id.* at 1179.

In ***Commonwealth v. Roebuck***, 32 A.3d 613 (Pa. 2011), our Supreme Court upheld a conviction over a challenge that accomplice to third-degree murder was not a legally cognizable offense. Therein, our Supreme Court remarked that malice had been proven because the appellant had "participat[ed] in a scheme designed, at a minimum, to stage an *armed* confrontation with the victim." *Id.* at 615 n.4 (emphasis added).

In the instant case, however, Appellant did not know, or at least was not proven to know, that Rankin was armed when the robbery of Johns began. This fact stands in stark contrast to ***Baskerville*** and ***King***, where the appellants knew their cohorts intended to commit <u>armed</u> robbery, and to the facts of ***Roebuck***, where the appellant conspired with others to ambush the victims with firearms. In all three of those cases, knowledge of the intent of others to commit crimes of violence *with firearms* appears dispositive as to whether the non-shooter appellants "consciously disregarded an unjustified and extremely high risk that [their] actions might cause death or serious bodily injury" or "anticipate[d] death or serious bodily injury would likely and logically result" from their actions.[6] ***Kling***, ***supra***.

_____

[6] In ***Baskerville*** and ***King***, this critical fact had been established by the appellants' own defense theories that they had only participated in their respective robberies while under duress from their armed cohorts. How this fact was established in ***Roebuck*** was not discussed by our Supreme Court. *(Footnote Continued Next Page)*

- 13 -

It is certainly true that accomplice liability does not demand complicity in the *result* of an offense. **Roebuck**, 32 A.3d at 623 (holding "accomplice liability does not require the defendant to have the conscious objective to cause a particular result when such an outcome is an element of the offense"). Thus, the Commonwealth was not required to prove that Appellant intended the death of Johns in order to prove that he was an accomplice to third-degree murder. However, Appellant's complicity in a 'robbery' does not, *ipso facto*, render him culpable for a homicide that resulted from that robbery. **See Knox**, 105 A.3d at 1197 ("After the passage of the Crimes Code, status as an accomplice relative to some crimes within a larger criminal undertaking or episode no longer *per se* renders a defendant liable as an accomplice for all other crimes committed. Rather, closer, offense-specific analysis of intent and conduct is required.") (citation omitted).

As was the case in **Baskerville** and **King**, *armed* robbery is the sort of offense that permits the inference that the perpetrator(s) acted with malice. But 'armed robbery' is, *a priori*, not mere 'robbery.'[7] If all robberies carried the same risk of harm, it would have been nonsensical for the **Baskerville** and **King** decisions to have distinguished armed robbery. Armed robbery is

_____
*(Footnote Continued)* ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯

[7] All armed robberies are robberies, but not all robberies are armed robberies.

- 14 -

different from unarmed robbery precisely because the former carries a significantly greater risk of harm than the latter, because the use of weapons inherently increases the risk of death or serious bodily injury.

Thus, it is not at all unfathomable that Appellant and Rankin, although sharing a common intent to steal marijuana from Johns, intended to commit conduct constituting different types of robbery, which involved significantly different risks to the victim. Accordingly, it is particularly relevant to my analysis what type of robbery was intended by Appellant, for it is his culpability for third-degree murder which is at issue.

Our Crimes Code defines the various forms of robbery as follows:

(1) A person is guilty of robbery if, in the course of committing a theft, he:

    (i) inflicts serious bodily injury upon another;

    (ii) threatens another with or intentionally puts him in fear of immediate serious bodily injury;

    (iii) commits or threatens immediately to commit any felony of the first or second degree;

    (iv) inflicts bodily injury upon another or threatens another with or intentionally puts him in fear of immediate bodily injury;

    (v) physically takes or removes property from the person of another by force however slight; or

    (vi) takes or removes the money of a financial institution without the permission of the financial institution by making a demand of an employee of the financial institution orally or in writing with the intent to deprive the financial institution thereof.

18 Pa.C.S. § 3701(a).

Notably, the robbery statute contemplates three categories of physical harm, whether such harm is inflicted or merely threatened: serious bodily injury, bodily injury, and force however slight. Clearly, subsections (a)(1)(i) and (a)(1)(ii) contemplate the most serious forms of physical harm, and the last offense, subsections (a)(1)(vi), does not require any degree of harm, inflicted or threatened. Generally speaking, therefore, as one reads down the list of robbery offenses, the risk of death or significant injury involved decreases. In other words, the risk of death from a robbery is greatest when the robbery involves the infliction of serious bodily injury, and least when it involves no injury or no threat of injury, as per subsection (a)(1)(vi).

When Appellant grabbed Johns' marijuana, he certainly intended to commit, at a minimum, an offense pursuant to Section 3701(a)(1)(v), as he was committing a theft with "force however slight." As will be discussed *infra*, he could also be said to have intended to commit a crime pursuant to 3701(a)(1)(iv). This is because, in the circumstances of this case, it would not be unreasonable for the jury to have concluded that Appellant intended Rankin's and Estes' presence to physically intimidate Johns into not resisting the theft of his marijuana (thus rationally implicating the "intentionally puts him in fear of immediate bodily injury" language of that provision). However, just because Appellant may have intended to utilize the threat or infliction of bodily injury, that does not, by itself, demonstrate that he intended to cause or threaten *serious* bodily injury. It is undisputed that such an inference could reasonably arise if it were true that Appellant knew

that Rankin was armed. However, as discussed above, there was no evidence at all that Appellant possessed such knowledge, or at least no evidence that was legally sufficient to permit such an inference.

I would conclude, therefore, that the Commonwealth failed to prove that Appellant consciously disregarded an unjustified and extremely high risk that his actions could cause death or serious bodily injury, nor did it prove that Appellant reasonably anticipated that death or serious bodily injury would likely and logically result from his participation in the robbery to which he conspired.[8] In so concluding, I emphasize that my analysis is specific to the facts of this case. I would not conclude, generally, that participants in unarmed robberies can never be found to be complicit in, and therefore liable for, resulting homicides. However, in the present case, it was not proven that Appellant knew that a firearm would be involved in the robbery of Johns, and no other evidence suggested that Appellant intended anything

_____

[8] The trial court supports a contrary conclusion by stating that Appellant "stole the marijuana by force *as Mr. Rankin was pointing a gun at Brandon Johns.*" TCO, at 10 (emphasis added). The trial court does not cite to the portion of the record that supports this assertion, nor does that statement comply with the trial court's own summary of the facts, quoted *supra*, which indicates that Rankin did not pull his gun until after Appellant grabbed Johns' marijuana. **See id.** at 2 ("At that point, [Appellant] attempted to steal the marijuana by grabbing the bag of marijuana and telling Brandon Johns that 'you might as well give me all the shit.' *A few seconds later*, Mr. Rankin pulled out a gun.") (emphasis added). Moreover, I have reviewed the record and cannot find any evidence or testimony that directly supports, or tends to support, the notion that Appellant stole Johns' marijuana *while* Rankin was brandishing his firearm.

more than to grab Johns' marijuana by, at most, physical intimidation.[9] As such, I believe the Commonwealth failed to prove that Appellant acted with malice and, consequently, Appellant's conviction for third-degree murder was not supported under an accomplice theory of vicarious liability.

*Conspiratorial liability for third-degree murder*

Appellant also argues that he cannot be held liable for the third-degree murder of Johns based on his role as a co-conspirator in the robbery. First, he claims that his conviction is unsustainable under that theory because the conspiratorial liability rule no longer exists in Pennsylvania. Second, even assuming conspiratorial liability does still exist in Pennsylvania, Appellant contends that such a theory does not support his culpability for third-degree murder because Johns' death was not a foreseeable consequence (*i.e.* natural and probable consequence) of the conspiracy.

*Post-crimes code conspiratorial liability*

I begin this stage of my analysis by noting that the first aspect of Appellant's claim is not unfounded. Historically speaking, at common law,

_____

[9] For instance, were there evidence that Appellant threatened to kill or maim Johns if Johns refused to submit, *regardless of his knowledge of Rankin's possession of a firearm*, there might have been sufficient evidence to support his complicity for third-degree murder because Appellant could have fairly been said to have "threaten[ed] another with or intentionally put[] him in fear of immediate serious bodily injury." 18 Pa.C.S. § 3701(a)(1)(ii). In such circumstances, it appears reasonable to presume that death or serious bodily injury would be foreseeable because death or serious bodily injury was actually threatened. No such evidence was presented to the jury in this case.

"[w]here the existence of a conspiracy is established, the law imposes upon a conspirator full responsibility for the natural and probable consequences of acts committed by his fellow conspirator or conspirators if such acts are done in pursuance of the common design or purpose of the conspiracy." *Commonwealth v. Thomas*, 189 A.2d 255, 258 (Pa. 1963). As noted above, with the adoption of the Crimes Code, the "natural and probable consequences" theory of culpability has been expressly rejected as it relates to accomplice liability. *See Knox*, 105 A.3d at 1197. Despite this alteration, the Crimes Code clearly provides for vicarious, accomplice liability under 18 Pa.C.S. § 306 ("Liability for conduct of another; complicity."). Yet, that provision does not expressly provide for conspiratorial liability as a distinct theory of vicarious criminal liability separate and apart from accomplice liability:

> **(b) Conduct of another.--**A person is legally accountable for the conduct of another person when:
>
>> (1) acting with the kind of culpability that is sufficient for the commission of the offense, he causes an innocent or irresponsible person to engage in such conduct;
>>
>> (2) he is made accountable for the conduct of such other person by this title or by the law defining the offense; or
>>
>> (3) he is an accomplice of such other person in the commission of the offense.

18 Pa.C.S. § 306(b).

At first glance, one might assume that Section 306(b)(2) might resolve this matter and save conspiratorial liability as a viable theory. However, the

law defining the offense of conspiracy, 18 Pa.C.S. § 903, does not speak at all to the question of vicarious criminal liability, conspiratorial or otherwise. Indeed, I cannot find any mention of conspiratorial liability in the Crimes Code at all.[10] Thus, one must wonder if conspiratorial liability exists merely as a remnant of the common law. As recently as *King*, a decision issued several decades after the adoption of the Crimes Code, this Court applied conspiratorial liability as a form of vicarious liability separate and distinct from accomplice liability.[11] *King*, 990 A.2d at 1177 ("We need not address the question of accomplice liability because the evidence was sufficient to support the conviction under conspiratorial liability."). In other cases, this Court has tended to blur the distinction between accomplice-based and conspiracy-based vicarious criminal liability. *E.g. Commonwealth v. Robinson*, 505 A.2d 997, 1000-01 (Pa. Super. 1986) (discussing accomplice liability to define the culpability of co-conspirators); *Commonwealth v. La*, 640 A.2d 1336, 1345 (Pa. Super. 1994) (same). However, 18 Pa.C.S. § 107

---

[10] This is even true with respect to second-degree murder, the statutory implementation of the felony-murder rule. *See* 18 Pa.C.S. § 2502(b).

[11] We recognize that it is highly problematic to cite *King* as support for any matter concerning conspiratorial liability, as the appellant in that case was convicted only for third-degree murder, while having been acquitted of second-degree murder, robbery, and conspiracy. Thus, the *King* Court's application of conspiratorial liability to King for third-degree murder, based on his status as a co-conspirator, is inexplicable. We can uncover no other case in the history of this Commonwealth where a defendant was held liable as a co-conspirator without having been convicted of a conspiracy offense.

dictates that all common law crimes were abolished by our legislature's adoption of the Crimes Code. **See** 18 Pa.C.S. § 107(b) ("**Common law crimes abolished.--**No conduct constitutes a crime unless it is a crime *under this title or another statute* of this Commonwealth.") (bold in original, italics added).

Thus, it appears that the Crimes Code, and Section 107 in particular, can be fairly read to have terminated, by omission, the common law theory of conspiratorial liability. The Majority does not appear to address this matter at all. However, for two reasons, I would decline to dispose of Appellant's conspiracy-related, third-degree murder sufficiency claim on that basis. First, as a practical matter addressed below, I would hold that conspiratorial liability does not apply to Appellant under the facts of this case, even if that theory of vicarious culpability survived our Commonwealth's adoption of the Crimes Code in 1972. Second, "[t]his panel is not empowered to overrule another panel of the Superior Court." **Commonwealth v. Beck**, 78 A.3d 656, 659 (Pa. Super. 2013). The **King** decision, despite some obviously unsustainable analysis (**see** footnote 11), purports to recognize the continued validity of both accomplice and conspiratorial liability as distinct theories of vicarious criminal liability. Accordingly, this panel lacks the authority to conclude otherwise. **Beck, supra**.

*Conspiratorial liability for third-degree murder*

I would conclude that there was insufficient evidence to demonstrate Appellant's guilt for third-degree murder based on his role as a co-conspirator to robbery. In *La*, this Court summarized the scope of conspiratorial liability as follows:

> All theories of vicarious responsibility for criminal conduct require the existence of a shared criminal intent. ***Commonwealth v. Bachert***, 271 Pa.Super. 72, 78, 412 A.2d 580, 583 (1979). The nexus which renders all members of a criminal conspiracy responsible for the acts of any of its members is the unlawful agreement. ***Commonwealth v. Cox***, 466 Pa. 582, 586, 353 A.2d 844, 846 (1976); ***Commonwealth v. Yobbagy***, 410 Pa. 172, 188 A.2d 750 (1963). The law in Pennsylvania is settled that each conspirator is criminally responsible for the actions of his co-conspirator, provided it is accomplished in the furtherance of the common design. ***Commonwealth v. Robinson***, 351 Pa.Super. 309, 316, 505 A.2d 997, 1001 (1986); ***Commonwealth v. Bachert***, *supra*, 271 Pa.Super. at 77, 412 A.2d at 583. In discussing conspiratorial accountability, our Supreme Court has held:
>
>> When there is evidence that one, who has not struck the fatal blow, has, nonetheless, shared in the criminal intent and the criminal activity, that person has aided and abetted in the commission of the crime and, thus, may be held responsible as an accomplice to another's acts and the consequences of those acts. ***Commonwealth v. Rife***, 454 Pa. 506, 312 A.2d 406 (1973); ***Commonwealth v. Wilson***, 449 Pa. 235, 296 A.2d 719 (1972); ***Commonwealth v. Lowry***, 374 Pa. 594, 98 A.2d 733 (1953). "The least degree of concert or collusion between parties to an illegal transaction makes the act of one the act of all." ***Commonwealth v. Strantz***, 328 Pa. 33, 40, 195 A. 75, 79 (1937).
>
> ***Commonwealth v. Vaughn***, 459 Pa. 35, 39–40, 326 A.2d 393, 395 (1974). Accordingly, despite the fact that an individual co-conspirator did not contemplate a killing, where such killing is a natural and probable consequence of a co-conspirator's conduct, murder is not beyond the scope of the conspiracy. ***Commonwealth v. Bigelow***, 416 Pa.Super. 449, 455, 611 A.2d

301, 304 (1992); **Commonwealth v. Riley**, 330 Pa.Super. 201, 212, 479 A.2d 509, 515 (1984).

**La**, 640 A.2d at 1345.

To state the obvious, a killing is a natural and probable consequence of a conspiracy to commit murder and, thus, under the above standard, a participant in such a conspiracy will be held responsible for a killing conducted by one of his co-conspirators to that agreement, regardless of whether the murder was accomplished in the same manner in which it was planned.[12] However, it appears to me that any co-conspirator to the crime of homicide in such a scenario would also be an accomplice to that crime as well, at least where the target victim of the conspiratorial agreement is the person actually killed. **See** 18 Pa.C.S. § 306(c). If the distinction between conspiratorial and accomplice liability is at all meaningful, it must be with reference to an individual conspirator's liability for crimes of co-conspirators other than the crime that was the *express* purpose or common design of the conspiratorial agreement.[13]

_____

[12] Unsurprisingly, the natural and probable consequence of any conspiratorial agreement is some variation of the crime to which the co-conspirators have agreed to commit.

[13] What I am describing here is to be distinguished from the felony-murder rule, which *only* applies to the crime of second-degree murder in Pennsylvania. It is certainly true that, "[i]n felony-murder, the malice necessary to sustain a conviction for murder is inferred from the underlying felonious act." **Commonwealth v. Spallone**, 406 A.2d 1146, 1147 (Pa. Super. 1979). However, there is no authority known to this Court that holds that the felony-murder rule applies outside the context of second-degree murder as defined in the Crimes Code: "A criminal homicide constitutes

*(Footnote Continued Next Page)*

*La* presents at least one case where conspiratorial liability of this sort may have applied. In *La*, this Court held that the trial court properly instructed a jury that "if [the] appellant shared the intent with his co-conspirators to commit aggravated assault on the victims and one of the victims was killed as a result of this attack, [the] appellant is criminally responsible for the act of his cohorts." *La*, 640 A.2d at 1345-46. Thus, the *La* decision, at least implicitly, endorses the notion that one need not conspire to kill in order to be held criminally liable for a killing committed by a co-conspirator. However, there is no doubt that the malice necessary for a third-degree murder conviction is the same malice necessary for a conviction for aggravated assault. *See Kling*, 731 A.2d at 147 ("There is no distinction between the malice essential to third[-]degree murder and that necessary for aggravated assault."). Malice, again, involves a conscious disregard of an unjustified and extremely high risk of death or serious bodily injury. *Id.* at 148. Logically, then, the death of the victim is at least one of the natural

*(Footnote Continued)* ————————————

murder of the second degree when it is committed while defendant was engaged as a principal or an accomplice in the perpetration of a felony." 18 Pa.C.S. § 2502(b). The statute goes on to define "perpetration of a felony" as follows: "The act of the defendant in engaging in or being an accomplice in the commission of, or an attempt to commit, or flight after committing, or attempting to commit robbery, rape, or deviate sexual intercourse by force or threat of force, arson, burglary or kidnapping." 18 Pa.C.S. § 2502(d). Interestingly, the codification of the felony-murder rule also fails to specifically identify the crime of conspiracy as an enumerated felony and, although it references accomplice liability, it makes no mention of conspiratorial liability.

and probable consequences of a conspiracy to commit aggravated assault, even though death was not specifically intended.[14]

Before the adoption of the Crimes Code, conspiratorial liability may have permitted holding a co-conspirator to the crime of robbery guilty for murder, committed by another co-conspirator during the course of that robbery, regardless of the circumstances of the robbery and the foreseeability of the resulting murder. For instance, in **Commonwealth v. Joseph**, 304 A.2d 163 (Pa. 1973), our Supreme Court stated:

> The principle by which a member of a conspiracy may be held criminally responsible for crimes which were actually committed by other members of the conspiracy stems from the belief that, in the case of each co-conspirator, since his knowing entry into the conspiracy is proof of his own criminal intent, it is perfectly fair and proper to hold him responsible for any crimes committed in furtherance of the conspiracy. Thus, in the instant case, if [the] appellant entered into a conspiracy to rob [the victim], the law will hold him responsible for her death which resulted from that robbery.

_____

[14] Aggravated assault always involves the causing or the attempt to cause serious bodily injury, with some notable caveats that involve specific protections for certain public employees, **see** 18 Pa.C.S. § 2702(a)(2), (3), (5), or for other vulnerable members of society, such as children and/or the elderly, **see** 18 Pa.C.S. § 2702(a)(8), (9). However, apart from these special classes of victims, the statue generally concerns the risk of causing _serious bodily injury_ as its basic element. **See Commonwealth v. Donton**, 654 A.2d 580, 584 n.1 (Pa. Super. 1995) ("The statute prohibits the attempt to cause serious bodily injury to another or the causing of such injury."). This is also true with other provisions of the aggravated assault statute that involve the use of deadly weapons, **see** 18 Pa.C.S. § 2702(a)(4), because the risk of serious bodily injury is greater even if one only attempts to cause mere 'bodily injury' with such a weapon.

*Id.* at 166.[15]   However, ***Joseph*** can also be read to be an application of the felony-murder rule which, prior to the Crimes Code, was applied to first-degree murder.   Today, however, the felony-murder rule only applies to second-degree murder, and I am cognizant of no case law, whatsoever, suggesting that the felony-murder doctrine applies to crimes other than second-degree murder after the adoption of the Crimes Code.   To hold otherwise would effectively apply the felony-murder rule outside the limited circumstance to which that common law rule has been explicitly retained in the Crimes Code, *i.e.*, in the context of second-degree murder.

Thus, the question before us is whether Rankin's killing of Johns was a foreseeable consequence of the robbery *to which Appellant conspired.*   Here, there was sufficient evidence that Appellant conspired to rob Johns. However, there was not sufficient evidence to show that that conspiratorial agreement encompassed a risk of death or serious bodily injury.   Appellant did not himself use such force, nor do the facts establish that he threatened the use of deadly force or force that could result in serious bodily injury. Appellant merely grabbed the marijuana out of Johns' hands.   Moreover, as discussed *supra*, the Commonwealth also did not prove that Appellant was aware that Rankin possessed any weapons at all, let alone a firearm.

---

[15] Although the ***Joseph*** opinion was issued in 1973, that case was tried prior to the adoption of the Crimes Code in 1972.

To be sure, Appellant may have intended a robbery that involved force however slight, or the implicit threat of bodily harm from the numerical odds faced by Johns. However, just as one does not reasonably foresee a death resulting from a simple assault, it follows that one who intends to threaten or utilize less than serious-bodily-injury-inducing force during the commission of a robbery does not reasonably foresee a resulting death.

Consequently, because the Commonwealth did not prove Appellant's knowledge of Rankin's possession of a firearm, and because Appellant did not threaten Johns with serious bodily injury or death, I would hold that the killing of Johns was not foreseeable to Appellant when he conspired to commit the crime of robbery, nor are there any other facts that would suggest otherwise. Consequently, I would reverse Appellant's conviction for third-degree murder.[16]

---

[16] The Majority reaches the opposite conclusion by what I believe to be a misapplication of the felony-murder rule to third-degree murder. I am aware of no authority that suggests that the felony-murder rule applies outside the context of second-degree murder since the adoption of the Crimes Code. Since Appellant was not convicted of second-degree murder, I believe our standard of review dictates that we must evaluate whether Appellant acted with malice sufficient to commit third-degree murder without reliance on the felony-murder rule.

To be clear, as a practical matter, if I were convinced that there was sufficient evidence to convict Appellant as an accomplice or co-conspirator to robbery under 18 Pa.C.S. § 3701(a)(i) and/or (ii) ("Felony-1 Robbery"), then I would agree that such evidence simultaneously supported a finding of malice for purposes of third-degree murder, because I consider death to be a natural and probable consequence of the conduct that defines those

*(Footnote Continued Next Page)*

For the same reasons, I would also vacate Appellant's sentence for Felony-1 Robbery, and remand for resentencing under a lower grading of robbery. Consistent with my analysis regarding Appellant's lack of culpability for third-degree murder, I agree that he did not commit, nor conspire to commit, Felony I robbery. As discussed at length above, Appellant clearly agreed with Rankin to rob Johns of his marijuana. However, because I conclude that there was no proof offered at trial that Appellant knew that Rankin was armed, nor proof that Appellant himself inflicted or threatened to inflict death or serious bodily injury, Appellant did not conspire to commit, nor did he commit, an armed robbery pursuant to 18 Pa.C.S. § 3701(a)(1)(i) or (ii).[17] There is also no evidence that Appellant

*(Footnote Continued)* _____

specific crimes. However, I would not conclude that Appellant is culpable for Felony-1 Robbery under the facts of this case.

Generally, I do not believe that all the codified forms of robbery present the same degree of risk so as to justify imputing malice necessary for third-degree murder equally from all. That all forms of robbery are not created equally should be obvious from the legislature's prescription of significantly different penalties for different forms of robbery. In the context of second-degree murder, conflation of these varied risks is effectively codified. However, outside the context of second-degree murder, we should evaluate the facts of each individual case and not rely on the one-size-fits-all precepts of the felony-murder rule. Here, I believe that the record failed to demonstrate that Appellant intended to commit a Felony-1 Robbery because it was not sufficiently demonstrated that he knew Rankin was armed. Thus, I do not believe that he acted with the malice sufficient to convict him of third-degree murder, because, based on his own conduct, it appears that he only intended to commit a snatch-and-grab robbery.

[17] "A person is guilty of robbery if, in the course of committing a theft, he: (i) inflicts serious bodily injury upon another; (ii) threatens another with or
*(Footnote Continued Next Page)*

himself inflicted or threatened to inflict death or serious bodily injury. **See Commonwealth v. Ostolaza**, 406 A.2d 1128 (Pa. Super. 1979) (holding evidence insufficient to support conviction for robbery under Section 3701(a)(1)(ii) where the defendant grabbed the victim's wallet and the victim resisted, causing "a brief tug of war over the wallet").

However, the factual record would support the jury's finding that Appellant conspired to, and ultimately committed, a robbery pursuant to 18 Pa.C.S. § 3701(a)(iv). I agree with Appellant that he only used "force however slight" when he grabbed the marijuana from Johns. **See** 18 Pa.C.S. § 3701(a)(v) (stating that a robbery is committed when, during the course of committing a theft, the accused "physically takes or removes property from the person of another by force however slight"). However, Appellant also put Johns in "fear of immediate bodily injury" by stealing his marijuana while accompanied by Rankin and Estes, his co-conspirators in the robbery, before the robbery was unilaterally escalated by Rankin. **See** 18 Pa.C.S. § 3701(a)(iv) (stating that a robbery is committed when, during the course of committing a theft, the accused "inflicts bodily injury upon another or threatens another with *or intentionally puts him in fear of immediate bodily injury*") (emphasis added); **but cf. Ostolaza, supra** (wherein the defendant acted alone when he wrestled the victim's wallet away from her). That

*(Footnote Continued)* ───────────────

intentionally puts him in fear of immediate serious bodily injury …." 18 Pa.C.S. § 3701(a).

Appellant conspired to commit the same type of robbery is also supported by sufficient evidence. The jury could have reasonably inferred that the plan to steal Johns' marijuana was to be effectuated by the implicit threat of force presented by the superior number of the co-conspirators in relation to the solitary victim. Thus, I agree with Appellant that there was insufficient evidence to convict him of Felony-1 Robbery and the related conspiracy offense, but conclude that there was sufficient evidence to establish a robbery conviction under 18 Pa.C.S. § 3701(a)(iv), and that he conspired to commit the same.

In summary, I agree with the Majority that the Commonwealth presented sufficient evidence that Rankin did not act in self-defense. However, contrary to the Majority, I would conclude that there was not sufficient evidence to support Appellant's conviction for third-degree murder. Finally, I would hold that there was not sufficient evidence to convict Appellant of Felony-1 Robbery, or conspiracy to commit the same, but I do believe that the evidence was sufficient to convict him of the lesser included offense set forth in Section 3701(a)(iv), and conspiracy to commit the same. Accordingly, I would reverse Appellant's conviction for third-degree murder, vacate his sentences for robbery and conspiracy, and remand for resentencing on those convictions.

I respectfully dissent.